# W. D. LOVELL AND OTHERS v. WARNER MARSHALL AND OTHERS.[1]

January 30, 1925.

No. 24,315.

**General allegation of agency limited by special facts pleaded.**

1. A general allegation of agency is limited by the allegation of the specific facts supposed to give rise to the agency. The general allegation is in the nature of a conclusion of law and, if not sustained by the specific facts pleaded, it will be disregarded.

**One of parties to a contract may appoint agent of the other parties to act for him.**

2. The general rule that an agent cannot represent all the parties to a contract unless, with full knowledge of the facts, they consent to his acting for them, is subject to the exception that one of the parties may appoint the agent of the others to act for him for a particular purpose and will then stand in the relation of principal as to the matters so intrusted to the agent, and as to those alone.

The facts alleged in the complaint and recited in the opinion were not sufficient to justify the conclusion that one M. was the agent of the plaintiffs to sell or find a purchaser for property they were to bid in at a foreclosure sale.

**Removal of cloud on title to personal property.**

3. The jurisdiction of the district court to remove a cloud on the title to property embraces personal as well as real property. Mere verbal assertions of ownership do not cast a cloud upon the title to property which the courts will dispel, nor can a suit be maintained to remove a cloud created by an instrument invalid upon its face.

The term "cloud" is indefinite. No rule can be formulated which will cover all the cases in which a court may properly give relief by the removal of an apparent cloud upon the complainant's title. Threatened litigation which will necessarily embarrass the title of trustees in possession of property for distribution among the persons they represent will justify a court in entertaining a suit to quiet the title to the property.

[1] Reported in 202 N. W. 64.

Action in the district court for Ramsey county to quiet title to certain securities and for other relief. From an order, Bechhoefer, J., overruling his demurrer to the complaint, Warner Marshall appealed. Affirmed.

*Denegre, McDermott, Stearns & Weeks* and *Franklin F. Phillips, Jr.,* for appellant.

*C. D. Gould,* for respondents.

LEES, C.

The trial court overruled a demurrer to the complaint, certified that an important and doubtful question was presented, and the defendant Marshall appealed. A condensed statement of the facts alleged follows:

The Wenatchee Valley Gas & Electric Company, referred to as the Wenatchee Company, was a corporation in the state of Washington engaged in the business indicated by its name. Its property was mortgaged to secure the payment of 654 bonds, each of the denomination of $1,000. The company was in default in the payment of the bonds and the holders appointed the plaintiffs as a committee to protect and enforce their rights under the mortgage. The committee commenced an action to foreclose the mortgage and in that action a receiver of the property was appointed. He carried on the business for some time, issuing receiver's certificates and contracting debts in excess of $200,000, and the property became subject to a lien therefor, superior to the lien of the mortgage.

The Washington Coast Utilities Company, hereafter designated as the Washington Company, was engaged in the same line of business as the Wenatchee Company and desired to acquire its property. Marshall was at the head of a corporation in Boston, Massachusetts, engaged in the business of buying and selling bonds and other securities. He was also an officer of the Washington Company, owned or controlled most of its stock, and conducted the negotiations with the committee for the purchase of the Wenatchee property. The negotiations began in 1920 and resulted in the execution of a contract dated April 14, 1921, and referred to as Exhibit B to which he and the plaintiffs were parties. Exhibit B recites that

Marshall desired to obtain the property of the Wenatchee Company for the Washington Company and the committee desired to consolidate the two companies. It provides that Marshall shall direct the action of the committee in the pending foreclosure suit and in bidding at the foreclosure sale, to the end that the property may be bid in for the bondholders at the lowest possible price, but, if necessary on account of competitive bidding, the committee might run the price up to $800,000 and bid more if authorized by Marshall. Marshall was to provide the committee with sufficient funds to pay all claims which had priority over the bonds and, in addition, the funds necessary to pay nondepositing bondholders their share of the proceeds of the sale. Upon receiving title to the property he was to transfer it to the Washington Company, and to deliver to the committee, for each bond of the Wenatchee Company deposited with them, one $500 bond of the Washington Company and $500 in its preferred stock, the bonds to be secured by a first mortgage on the combined properties of the two companies. The committee agreed to proceed to acquire the Wenatchee property, subject to Marshall's directions; to bid it in at the receiver's sale as he directed and at the lowest possible price; to assign the bid and the rights acquired thereunder to him; and to recommend the plan to the bondholders and endeavor to obtain the deposit of all bonds not already in the committee's hands. The holders of 650 bonds deposited them with the committee and gave their approval to the plan, and on August 19, 1921, the receiver offered the Wenatchee property for sale. It was bid in by plaintiffs for $600,000 and the sale was confirmed by the court. Although Marshall failed to furnish the money required to take up the receiver's certificates and pay other claims against the property which had priority over the bonds, and although plaintiffs were compelled to procure the money from other sources, they nevertheless assigned their bid to him and he transferred the property to the Washington Company.

When Exhibit B was executed, the plaintiff W. D. Lovell owned 233 of the bonds of the Wenatchee Company and represented 166 more. On May 16, 1921, he and Marshall entered into a contract, designated as Exhibit J, which provided, among other things, that

Lovell should vote the bonds he owned and represented in favor of the plan set out in Exhibit B, and use his best efforts to induce other bondholders to favor the plan; that he should pay the expense of the committee, give engineering advice to Marshall to put the Wenatchee property in good condition, represent him in negotiations with the receiver and with banks, railroad companies and the Public Service Commission, pay the compensation allowed the receiver, and deliver to Marshall out of the preferred stock of the Washington Company which he received as his share thereof under the terms of Exhibit B stock of the par value of $43,000. In return for this Marshall promised to deliver to Lovell bonds of the Washington Company of the par value of $127,000 and the company's notes amounting to $50,000, in addition to the bonds and stock Lovell received through the bondholders' committee. This agreement was not called to the attention of the plaintiffs Fassett and Taylor, and, until shortly before this suit was commenced, they did not know that Marshall and Lovell were dividing secret profits of the transaction.

We come now to the vital portion of the lengthy complaint. It is alleged that at all the times mentioned Marshall was acting as agent of the plaintiffs as well as of the Washington Company; that, as plaintiffs' agent, it was his duty to account to them for all he received from the Washington Company; that he represented to Fassett and Taylor that $600,000 was all that company would pay for the property; that they relied on this representation and, in the belief that it was true, they executed Exhibit B, and performed their part of the agreement set forth therein in ignorance of the fact that he was to receive from the Washington Company more than the amount of securities he turned over to them; and that the additional securities he received should be delivered to plaintiffs for the benefit of the bondholders of the Wenatchee Company.

An allegation of the company, made by Lovell alone, is to the effect that he performed his part of Exhibit J, that its terms were known to the officers of the Washington Company, though unknown to Fassett and Taylor, that when he signed it he believed he had a right to do what he did but, on the recent advice of his

counsel, he has made full disclosure of the facts to Fassett and Taylor and has turned over to the committe $85,967 par value of the securities he received from Marshall under Exhibit J, retaining the remainder as his pro rata share thereof as the owner of 233 bonds. Continuing, the complaint alleges that Marshall claims and asserts that he is the owner of and entitled to receive the bonds and notes he delivered to Lovell pursuant to Exhibit J, has made a demand upon Lovell for their return, and is about to bring an action to enforce his claim; that plaintiffs, as the representatives of the bondholders, are the only persons who have any right to or interest in these securities; and that they now have them in their possession within the jurisdiction of the district court of Ramsey county.

The prayer for relief is that Marshall account for and deliver to plaintiffs the securities he received, in addition to those he turned over to them, and that the title to the securities now in their possession, or in the possession of any other person for them, be quieted and plaintiffs decreed to be the owners thereof as trustees for the bondholders.

The arguments of counsel are largely directed to two questions: (1) Does the complaint state facts which would authorize the court to direct Marshall to turn over the securities in question? (2) Can plaintiffs maintain a suit to quiet title to the securities Marshall delivered to Lovell under Exhibit J?

1.   Marshall was acting for the Washington Company throughout the negotiations. Of that there can be no doubt. Was he also acting for the plaintiffs? The complaint alleges in general that he was, but it also pleads the specific facts from which that conclusion is drawn, so that the question is: Do the special facts pleaded warrant the conclusion?

It is a rule of pleading that specific prevail over general allegations, and hence where a result of fact is pleaded generally and also the specific facts by which the general result is reached, the latter control and, if insufficient to support the general result, the pleading is bad.  Willison v. N. P. Ry. Co. 111 Minn. 370, 127 N. W. 4; Dunnell, Minn. Dig. § 7722.  This rule of pleading was applied

in Everett v. Drew, 129 Mass. 150, a case of agency, where the court said:

"It is true that the declaration alleges that Drew was the agent of the defendants. But it also alleges the specific facts which show the relations between the parties, and those facts show that he was not an agent. The allegations that he was an agent must be regarded as mere allegations of a conclusion of law which are not sustained by the facts. The defendants' demurrer was therefore rightly sustained."

2. The general rule is that no person has a right to represent both contracting parties in a given transaction, unless they know the facts and consent to his acting for both. Dunnell, Minn. Dig. § 198; Mechem, Agency, § 1590. But one party to the transaction, having knowledge of the facts, may appoint the agent of the other party to act for him for a particular purpose, and will then stand in the relation of principal as to the matters he intrusted to the agent, and as to those alone. 1 Mechem, Agency, § 1592; 2 C. J. p. 448; Schick v. Warren Mtge. Co. 86 Kan. 812, 122 Pac. 872, Ann. Cas. 1913C, 466.

Although Marshall was plaintiffs' agent for certain purposes, that fact alone did not charge him with the duty of securing the best price obtainable for the Wenatche property. Plaintiffs did not employ him to sell the property and they knew he represented the buyer. He agreed to aid them in conducting the foreclosure proceedings to the end that they might acquire title to the property, but they fixed the price he was to pay when and if they succeeded in purchasing the property at the foreclosure sale, knowing that he was buying it for the Washington Company, in which he was largely interested, and that he would seek to buy cheap. He dealt with them at arm's length and not in a fiduciary capacity insofar as the sale price was the subject of the transaction. He profited at the expense of the Washington Company and not at the expense of the bondholders of the Wenatchee Company.

The negotiations with Marshall covered a period of more than a year. Plaintiffs allege that during the whole time they sought in

vain to get a better offer for the property, but none so good as Marshall's could be obtained. Doubtless Marshall knew that his company would give more than $600,000 for the Wenatchee property, and was ready to take advantage of the situation to reap a profit for himself. In the transaction he seems to have forgotten his duty to the Washington Company, and Lovell his to the bondholders, but this is not to the point.

Plaintiffs lay stress on paragraph 9 of Exhibit B, which provides that if an outsider made a bid of more than $800,000 for the property, the committee should pay Marshall $7,500 for his services. What services? Clearly enough, those he was employed to render to the committee; that is, services of the special nature already mentioned.

Paragraph 6a, read in conjunction with the remainder of Exhibit B, forbids the conclusion that Marshall was a sales agent for the committee. The paragraph reads thus:

"It is the intent of the foregoing that the total price to be paid for the property by Warner Marshall is the services to be rendered under Paragraphs 2, 3 and 4, together with the securities under Paragraph 6 hereof."

Marshall's alleged failure to perform the duties he owed to plaintiffs is the whole basis for the claim now under consideration. Those duties are defined in Exhibit B, cannot be enlarged by general allegations in the complaint, and do not include the duty to find a purchaser or sell the property to the best advantage of plaintiffs or those whom they represent, and we conclude that if anyone has the right to call him to account for the secret profits he obtained, it is the Washington Company and not the plaintiffs.

3. Whether the courts will entertain a suit to remove a cloud upon the title to personal property is a question upon which the courts are not in harmony. There is respectable authority to the effect that, regardless of the character of the property, a suit to clear a clouded title lies whenever the facts will justify a court in granting such relief. Magnuson v. Clithero, 101 Wis. 551, 554, 77 N. W. 882; Earle v. Maxwell, 86 S. C. 1, 67 S. E. 962, 138 Am.

St. 1012; 5 Pomeroy, Eq. Jur. § 2151. Subdiv. 5, § 7738, G. S. 1913, confers jurisdiction upon the district court, after service of the summons by publication, to hear and determine actions involving real or *personal* property within the state in or upon which the defendant has or claims a lien or interest, or where the relief demanded consists wholly or partly in excluding him from such lien or interest. Whatever the rule may be in other jurisdictions, under our statute personal property may be the subject of an action to determine adverse claims.

It is urged that all the complaint alleges is that Marshall asserts verbally that he is the owner of the securities in question. Undoubtedly something more than mere verbal assertions of ownership are necessary to so cloud a title that the courts may be called upon to dispel the cloud. As a general rule the clouds which the courts will remove are those which arise from instruments of record, and the cloud must be of such a nature that it casts a shadow upon the plaintiff's title. 5 Pomeroy, Eq. Jur. §. 2147.

In Maloney v. Finnegan, 38 Minn. 70, 35 N. W. 723, it was .held that suit to remove a cloud upon a title is not maintainable where the alleged invalidity of the instrument creating the cloud is apparent upon its face. Mr. Justice Mitchell dissented, saying that this doctrine is based wholly on verbal logic and not upon any principle of justice or common sense and has been seriously criticised by some of the best textwriters and repudiated by some courts. Notwithstanding his vigorous dissent, in Mogan v. Carter, 48 Minn. 501, 51 N. W. 614, the court adhered to its former ruling, referring to the doctrine, in New England M. L. I. v. Capehart, 63 Minn. 120, 65 N. W. 258, as the strict equity rule recognized by a majority of the court in the two cases cited. The doctrine has been severely criticised, 5 Pomeroy, Eq. Jur. § 2156, and, from the note appearing on pages 4846 and 4847, it seems that it has been repudiated in some states and limited in others. We think it should not be extended or applied literally to every case which seems to fall within its scope.

The term "cloud" is indefinite. It is hardly possible to formulate an all-embracing definition or to lay down rules which will cover all the cases in which a court of equity may properly come to the aid

of the complainant. It may enjoin a threatened act which will necessarily embarrass plaintiff's title, provided the danger is imminent and not merely speculative or potential. 5 Pomeroy, Eq. Jur. §§ 2147, 2148.

Marshall not only asserts that he is the owner and entitled to the possession of the bonds and notes in question, but demands that one of the committee (Lovell) return them to him, and is about to bring an action to enforce his claim. The securities are in the hands of the committee as trustees for the bondholders. They may not safely and without embarrassment proceed to distribute them among the bondholders they represent until the rights of all the parties are determined by the court. If distribution were made and Marshall, having brought his threatened action, should prevail, the plaintiffs would find themselves in an unfortunate position. They could not return the securities to Marshall unless they got them back from the bondholders and, if they did not succeed in this, they would be held for their value and their trusteeship would result in financial loss to them.

For these reasons we conclude that sufficient facts are stated to give the court jurisdiction to determine whether Marshall's claim to the securities has any merit and, if it is without merit, to decree that the plaintiffs have good title as trustees for the bondholders. Insofar as the complaint relates to the securities which Marshall retained under Exhibit J, it fails to state a cause of action, but, since the demurrer goes to the complaint as a whole and one good cause of action is pleaded, the demurrer was properly overruled.

Order affirmed.