NORTHWEST FARMERS CREDIT ASSN., Appellant, v. HORSWILL, et al, Respondents.

(231 N. W. 908.)

(File No. 6777. Opinion filed August 12, 1930.)

*Crawford & Crawford*, of Huron, for Appellant.
*McFarland & Kremer,* of Watertown, for Respondent.

MISER, C. The Northwest Farmers' Credit Association, appellant herein, was engaged in the business of making loans to farmers. In 1924, it loaned to respondents Horswill $2,200, taking their note and chattel mortgage. In October, 1926, the Horswills required an additional $2,340 to buy cattle. They went to Pipestone, Minn., where the office of appellant was located, signed notes for $4,800, and executed a chattel mortgage covering the property described in the mortgage of 1924, and the cattle to be purchased with $2,340 of the additional $2,600. The remaining $260 was to buy 26 shares of stock in appellant company, which the policy of appellant association required the borrowers to buy. The money was received by Farmers' State Bank of Troy, S. D., herein called the Troy bank, through one Vaughn, vice president thereof, which bank a few days later was taken in charge by the superintendent of banks as insolvent. The trial court found that the Troy bank and its vice president, Vaughn, were the agents of appellant; that re-

spondents had paid all of the $2,000 loan; that neither the 26 shares of stock nor the $2,340 had ever been turned over to respondents by appellant's agent, and the notes for the additional $2,600 were without consideration and void. From the judgment thereon and from the order denying new trial, this appeal is taken.

Of the evidence favorable to appellant's contention that the Troy bank and Vaughn, its cashier, were agents of respondents, the strongest is the draft for $2,340, signed by respondents Horswill, naming the Troy bank as payee and appellant credit association as drawee. By means of this draft, Vaughn obtained the money from appellant association, which paid the draft immediately on presentation thereof. Was this conclusive on the question of agency under the decision in Marland Refining Co. v. Penn Soo Oil Co., — S. D. —, 222 N. W. 594, 595?

The appellant in that case had for many years sold oil to the respondent. In collecting for it, appellant had sent its sight drafts with bills of lading attached to other banks than the Sioux Falls Trust & Savings Bank. Some time before the shipment in question, respondent requested appellant to send its drafts and bills of lading to Sioux Falls Trust & Savings Bank. Appellant did so, although how many collections were thus made is not clear. This court held that "the mere fact that the respondent requested appellant to draw through the Sioux Falls Trust & Savings Bank did not make that bank the agent of respondent. * * * The request did not make it obligatory upon appellant to select that bank as its agent, although it may have been done for respondent's convenience." The mere request of the customers did not relieve the drawer of the sight draft from the responsibility of selecting a safe bank as payee thereof.

In the case at bar, the evidence supporting the verdict and later finding of the court that the Troy bank and Vaughn, its officer, were the agents of Northwest Farmers' Credit Association, appellant, is in part as follows: S. B. Duea was the secretary of the appellant association, which was a subsidiary organization of the Federal Intermediate Credit Association of St. Paul, Minn., organized by act of Congress to make loans to farmers. Vaughn, of the Troy bank, made a number of loans for appellant in the vicinity of Troy, among these loans being one for $2,000 made to respondents in the fall of 1924. In 1926, Duea said to the Hors-

wills that, if they wanted to borrow from the Northwest Farmers' Credit Association to buy cattle, they should go to the Farmers' State Bank and Vaughn would make the loan for them. The Horswills agreed to buy 44 head of cattle from one Petterson for $2,340, cash when cattle were delivered.

The Horswills, accompanied by Vaughn, went to appellant's office in Pipestone and made out application for a loan for $4,800 to take up the old note and to cover the new loan. Duea asked Vaughn if he had seen the cattle; Vaughn replied that he had and that they were good cattle. Respondents then signed a note for $4,800, and executed a chattel mortgage describing the property covered by the 1924 mortgage, to be thereupon satisfied, and describing by name and registry number the 44 head of cattle which they had agreed to buy from Petterson. One of respondents testified:

"I told Mr. Duea as soon as we got the money we would get the cattle, and that the purpose of the loan was to buy the 44 head of whitefaced cattle, which were specifically designated in the mortgage. * * *

"After the details of the loan had been completed and we were ready to go home, Mr. Duea wanted to know when we would get the cattle; that Mr. Vaughn would fix up about getting the money when we got home. The way in which he said it was, Mr. Vaughn asked him if he had a sight draft blank; Mr. Duea said he did not have one; told him he should go home and fix one up. * * * Mr. Vaughn was there and helped with the papers, and one thing and another, and he [Duea] said Vaughn would take care of that."

The following Monday morning, Vaughn appeared at respondents' place with a sight draft already prepared by him, and at his request respondent Ralph H. Horswill signed the same. As to the conversation at that time, Ralph Horswill testified:

"Vaughn said he would fix the matter up in this way, by having us sign this sight draft. * * * He said as soon as this sight draft was paid he could get the cash; get possession of the cattle; turn the cash over to Mr. Petterson and get the cattle."

Instead, Vaughn took the draft to his bank, credited Horswill's account at once, but on Friday told the Horswills and Petterson, from whom they were buying the cattle, that the money had not yet come and that they could not expect it for three or four days

more. The draft had been paid by appellant on presentation. The day after Vaughn told the Horswills that the money had not yet come, the bank closed. The Horswills did not know their account had been credited, did not get the money, and consequently did not get the cattle which they had mortgaged to appellant.

From the foregoing and other evidence produced by respondents, the trial court found that the Troy bank and Vaughn, its vice president, were the agents of appellant association. In this case there is no clear preponderance against the finding; indeed the evidence amply supports it. The facts of this case are readily distinguishable from the facts in the Marland Refining Company Case. Here both appellant and respondents, as well as the owner of the cattle mortgaged, intended the transaction to be complete only when appellant's money had gone to Petterson, Petterson's title transferred to respondents, and respondents' mortgage, theretofore executed, thereby had been made effective. The Troy bank and Vaughn, its officer, were the agents of appellant in carrying out this plan to keep control of the funds until the purchase of the cattle was complete, in order to accomplish the intended object of protecting the security of the lender.

Appellant stresses the fact that, after the Troy bank failed, respondents filed a claim with the superintendent of banks for the money credited to their account. Appellant does not state whether this created an agency by ratification, or whether this was merely an additional evidentiary fact. An agency may be created by a subsequent ratification, and this ratification may be made by accepting "the benefit of the act, with notice thereof." Section 1250, Rev. Code 1919. However, when the bank failed on November 7, 1925, respondents knew nothing about their account having been credited on November 2d. On November 5th, the draft was paid by appellant. On November 6th, Vaughn told respondents and Petterson that the money had not yet arrived. On November 7th, not knowing that a deposit ticket had been made out and their account credited on November 2d with the amount of the draft and that the draft had been paid on November 5th by appellant, respondents went to Pipestone, told Duea the Troy bank was in difficulty, and asked him to protect himself on that draft. Duea told them to wait and see what happened. After the bank failed, they filed a claim. The examiner in charge told them it would be

paid as soon as he could collect the funds wherewith to pay it. Respondents then wrote to appellant, stating they would return the money as soon as the examiner turned it over to them or would duplicate the security; Petterson having in the meantime sold the cattle which they were purchasing and mortgaging. After allowing the claim as a claim preferred over all other deposits and against all the assets of the bank, the superintendent rescinded such allowance and approved it as a preferred claim payable ratably with other preferred claims out of the cash in the possession of the bank on the date the bank closed. But respondent had not, at the time of answering appellant's complaint nor at the time of trial, received any money on the claim, nor did they, until during the trial, know that Vaughn had credited their account five days before the bank closed. We are of the opinion that the filing of the claim, under all the circumstances, was not such a ratification as to create an agency for respondents. This was merely another evidentiary fact to be considered in determining whether Vaughn and the Troy bank were the agent of appellant or the agent of respondents.

■ There is evidence in the case at bar which tends to show that Vaughn was the agent of respondents. But, as was said in Cutter v. Powers, 200 Mich. 375, 166 N. W. 1029, 1032: "Often the agent of one party to a transaction is appointed by the adverse party as his agent for certain purposes; and each party will then stand in the relation of principal to the agent as to the matters by him intrusted to the agent, and as to those alone. 2 Corp. Juris, 448." Wagner v. Spaeth, 36 Wyo. 279, 254 P. 123, 125; Lovell v. Marshall, 162 Minn. 18, 202 N. W. 64, 66.

■ But this was no case of the borrower leaving his note and mortgage with an agent to be delivered when the money was paid by the lender to that same agent. Here the borrowers had executed and had themselves *delivered* to the lender their note and mortgage on October 31st. It was as agent for the lender, appellant, that Vaughn was to see that the money loaned by appellant was paid to the seller of the cattle so that the mortgage received by appellant would cover property owned by the mortgagors. Appellant wanted assurance that the money it was loaning to respondents would be used to buy the cattle which respondents were mortgaging to appellant. For this purpose it appointed Vaughn its agent. That Vaughn may have also been the agent of respondents for certain

purposes does not make him any less the agent of appellant for accomplishing the main object for which he was appointed.

In Burlington Savings Bank v. Prudential Insurance Co., 206 Iowa, 475, 218 N. W. 949, 951, the Iowa court quotes from the Restatement of the Law of Agency, § 71, Am. Law Inst. (Tent.), draft prepared by the late Floyd R. Mechem, as Reporter, in consultation with the director and advisers on the law of agency thus: "Where a person is unquestionably the agent of one party or the other in a transaction, but there is a dispute as to which party is his principal, the question is to be decided by a reference to all the facts and circumstances of the case. A proper interpretation of the facts may indicate that he was agent of one party although the contract recites or he testifies that he was the agent of the other."

On all the evidence, the trial court as well as the trial jury found that Vaughn was the agent of appellant. Such a finding was sufficiently supported by the evidence, and there is no clear preponderance against it. The trial court heard all the evidence and had an opportunity to observe the demeanor of the witnesses and their manner of testifying, advantages which this court is denied. Speackman v. Gross, 25 S. D. 244, 126 N. W. 389. This court has repeatedly held that the findings of the trial court will not be disturbed unless there is a clear preponderance of the evidence against such findings. See Bates et al. v. Smith, 48 S. D. 602, 205 N. W. 661.

Both parties here are innocent. As said in Wagner v. Spaeth, supra, the court has "the unpleasant duty of deciding who of two innocent parties shall suffer by the default of an agent." We are of the opinion that the trial court correctly determined from the evidence that it was the agent of appellant who used appellant's money, not to pay Petterson, who demanded cash only for his cattle, but to bolster up an insolvent bank. Though innocent itself, appellant must bear the loss of its agent's breach of duty. Smith v. Mills, 112 Or. 496, 230 P. 350. Because of that breach of duty, respondents did not receive any consideration for that part of their note. That part of the note for which consideration had theretofore been received has been paid.

The judgment and order appealed from are affirmed.

BROWN, P. J., and POLLEY, SHERWOOD, and CAMPBELL, JJ., concur.

BURCH, J. (concurring). I am satisfied the reason and result reached by Commissioner MISER are correct. In any case where the drawer of a draft is seeking to collect or receive a sum of money to which he is unconditionally entitled, the drawee is necessarily the agent of the drawer to receive the money. That was the situation in Marland Refining Co. v. Penn Soo Oil Co., 54 S. D. 10, 222 N. W. 594. But, where the drawer is not entitled to the money unconditionally, or at all, the circumstances and intent of the parties must control. In the instant case appellant was making a loan to strangers through the office of the Farmers' State Bank of Troy. The loan was secured by a chattel mortgage on cattle to be purchased with the borrowed money. The mortgage was valueless as security until the mortgagors acquired title. There were things to be done to complete the loan, and, when the draft was drawn, the drawers had no right to expect it to be honored unconditionally. It was not unreasonable for appellant to appoint the cashier of the bank to supervise the remaining acts to be done in completion of the loan. The means employed to transmit the money to the then owner of the mortgaged cattle and effect the transfer of title to the cattle to appellant's mortgagors was a convenient and not unusual business transaction. The draft was convenient in bookkeeping, but appellant in all probability had no intention to release control of the money or to pay it to respondents. Under their contract, respondents were not entitled to it. It is not at all likely that respondents could have drawn the money in person or could have chosen the drawee or controlled his actions. I think the circumstances plainly show Vaughn was appellant's agent.