ZANTOP INTERNATIONAL AIRLINES, INC v EASTERN
AIRLINES

ZANTOP INTERNATIONAL AIRLINES, INC v LOCKHEED
AIRCRAFT CORPORATION

Docket Nos. 116838, 116839, 116840, 123537, 123940, 129496, 129497.
Submitted March 10, 1993, at Detroit. Decided June 22, 1993,
at 9:45 A.M.

Five separate actions were brought in the Wayne Circuit Court as
the result of the crash of an airplane manufactured by Lock-
heed Aircraft Corporation and owned by Zantop International
Airlines, Inc. An action was brought on behalf of the estate of
Bruce G. Whitesell, a passenger killed in the crash, against
Zantop, Lockheed, Bendix/Allied Corporation, and Eastern Air-
lines. Eastern, previous owner of the plane, brought a cross-
claim against Zantop for contractual indemnity. Separate ac-
tions were brought on behalf of the estates of Charles R.
Embry, John J. Bolton, and John B. Figarra, Zantop employees
killed in the crash, against Lockheed, Bendix, and Eastern.
Eastern filed a third-party action against Zantop in each of
those actions. Zantop brought an action to recover the cost of
the plane and for contribution and indemnity against Lockheed
and Bendix. The actions were consolidated in the trial court,
after which Eastern, Lockheed, and Bendix settled jointly with
the four estates. The court, Claudia House Morcom, J., granted
summary disposition for Eastern of its claim for indemnifica-
tion by Zantop and ordered Zantop to pay Eastern one-third of
the amount of the settlement with the estates plus costs and
attorney fees incurred in the defense of the principal action
and the prosecution of the indemnification action.

During the ensuing jury trial of the unresolved Whitesell

REFERENCES

Am Jur 2d, Costs, §§ 14, 24; Indemnity, § 315; Judgments, §§ 415,
417-420; Motions, Rules, and Orders, § 41; Trials, §§ 807-811.

Dismissal of state court action for plaintiff's failure or refusal to
obey court order relating to pleadings or parties. 3 ALR5th 237.

Judgment in action against codefendants for injury or death of
person, or for damage to property, as res judicata in subsequent
action between codefendants as to their liability inter se. 24
ALR3d 318.

claim against Zantop and Zantop's claims against Lockheed and Bendix, the attorney for Zantop questioned a witness concerning a document that had been subject to an order in limine that prohibited any reference to the document in the presence of the jury. The court ruled that the question was in violation of the order in limine and ordered a default against Zantop in the Whitesell case and dismissed Zantop's claims against Lockheed and Bendix. The jury thereafter determined the damages to be paid by Zantop to the Whitesell estate.

As a result of the dismissal of Zantop's claims against them, Lockheed and Bendix sought costs and attorney fees on the basis that they had accepted and Zantop had rejected the mediation valuations that had been returned in favor of Zantop against them. Although Zantop argued that Lockheed and Bendix were not entitled to mediation sanctions because after its rejection of the mediation valuation it had made an offer of judgment to which Lockheed and Bendix had failed to respond, the court awarded costs and attorney fees.

Zantop separately appealed several different orders entered in the various actions. Lockheed and Bendix cross appealed. The appeals were consolidated.

The Court of Appeals *held:*

1. Although Zantop failed to comply with the notice requirement of the court rules with respect to its intent to rely on Florida law in determining its contractual obligation to indemnify Eastern, Eastern was not harmed by the absence of such notice in light of the fact that it had drafted the contract that provided that the contract should be interpreted under Florida law.

2. Florida law clearly requires that a contract that provides for indemnification against one's own negligence must express that intent in clear and unequivocal terms. Florida courts have held repeatedly that language indemnifying one "against all claims" is insufficient to be an unequivocal expression of an intent to indemnify against one's own negligence. Because Eastern in its settlement with the estates admitted its own negligence, the trial court erred in ruling that Eastern was entitled to indemnification from Zantop. Further, because the court's award of costs and attorney fees in favor of Eastern was dependent on Zantop's liability for indemnification, the award of those costs and fees was also erroneous.

3. The questioning of the witness concerning the document subject to the order in limine was a clear violation of that order. Although dismissal is a harsh sanction and should be used with great restraint, the trial court did not abuse its

discretion by dismissing Zantop's claims against Lockheed and Bendix. Although the violation of that order alone would have been insufficient to warrant dismissal, that violation in the context of repeated violations by Zantop of other orders of the court was sufficient to justify the dismissal.

4. The question whether Zantop is entitled to recover from Lockheed and Bendix the amounts it paid to Eastern as indemnification is rendered moot by the holding that Eastern is not entitled to indemnification.

5. The argument of Zantop's attorney in support of a motion for a directed verdict in the Whitesell case that there had been no evidence presented that the airplane was not airworthy did not preclude Zantop from proceeding with its claims against Lockheed and Bendix that were premised on the assertion that the plane was not airworthy. Neither would the testimony of the Zantop official called as an adverse witness to the effect that the plane was airworthy preclude Zantop from proceeding with its claim that the plane was not airworthy.

6. Because the offer of judgment was made after the rejection of the mediation valuation, the right to costs and attorney fees is to be determined by the court rule governing offers of judgment. Such costs and fees are payable only if a verdict is rendered, and a dismissal is not a verdict within the meaning of that court rule. Accordingly, Lockheed and Bendix are not entitled to costs and attorney fees, and it was error for the trial court to award them under these circumstances.

Affirmed in part and reversed in part.

1. NOTICE — COURT RULES — FOREIGN LAWS.

The failure of a party to give notice of an intent to rely on the law of a foreign jurisdiction in accordance with the court rules does not preclude reliance on such foreign law where the party to whom notice should be given is already aware that the foreign law is controlling (MCR 2.112[J]).

2. INDEMNITY — CONTRACTS — NEGLIGENCE.

Florida law provides that a contract of indemnity is enforceable with respect to an indemnitee's own negligence only if such an intent is expressed in clear and unequivocal terms; an indemnity contract indemnifying one from and against all claims is not sufficient to provide indemnity for the indemnitee's own negligence.

3. COURTS — PRETRIAL ORDERS — SANCTIONS — DISMISSALS.

A trial court may dismiss a party's action for that party's violation of a pretrial order where the violation, although not

sufficient in itself to warrant the harsh remedy of dismissal, is a part of a pattern of violation of the court's orders.

4. TRIAL — ARGUMENTS OF COUNSEL — STIPULATIONS OF FACT — INDEMNITY.

Arguments of counsel in support of a motion for a directed verdict in the principal action does not constitute a stipulation of fact such as will preclude the party for whom the arguments were presented from proving a contrary proposition in an indemnity action.

5. TRIAL — COSTS — MEDIATION — OFFERS OF JUDGMENT.

Where there have been both a rejection of a mediation award and a rejection of an offer of judgment, the court rules governing the later rejection control whether costs should be awarded (MCR 2.405[E]).

6. TRIAL — COSTS — OFFERS OF JUDGMENT — VERDICTS — DISMISSALS.

Dismissal of a party's action by a court is not a verdict within the meaning of the court rule governing offers of judgment; costs and attorney fees are payable following an offer of judgment only upon entry of a verdict (MCR 2.405[A][4],[D]).

*Barris, Sott, Denn & Driker* (by *Eugene Driker, Andrew M. Zack,* and *Daniel J. LaCombe*), for Zantop International Airlines, Inc., on appeal.

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton, P.C.* (by *Michael L. Updike*), for Eastern Airlines, Inc.

*Vandeveer Garzia* (by *Robert D. Brignall*), for Bendix/Allied Corporation.

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton, P.C.* (by *Janet G. Callahan*), for Lockheed Aircraft Corporation.

Before: GRIBBS, P.J., and HOLBROOK, JR., and NEFF, JJ.

PER CURIAM. These appeals involve a fatal airplane crash. In 1977, Zantop International Air-

lines, Inc., purchased four used airplanes from Eastern Airlines. On May 30, 1984, one of the planes, a Lockheed Electra cargo plane, broke up in midair over Pennsylvania. Three Zantop employees (Charles R. Embry, John J. Bolton, and John B. Figarra) and one passenger (Bruce G. Whitesell) were killed.

Zantop argued that the removal of a "verticality monitor" was the likely cause of the accident. The monitor was removed by Eastern (when it owned the plane) pursuant to a service bulletin from Bendix/Allied Corporation, the manufacturer of the monitor. Zantop presented the following assessment of the accident: The plane probably experienced a failure of an instrument gyro. The monitor, had it still been installed in the plane, would have identified the gyro malfunction and would have disengaged the automatic pilot or warned the copilot of the failure in a timely manner. However, because of the absence of the monitor, the aircraft went into a rolling motion or tight turns, preventing the pilot from regaining control. Increased G-forces then caused the plane to break apart.

Bendix argued that pilot or crew error caused the accident. The plane's manufacturer, Lockheed Aircraft Corporation, also alleged that Zantop failed to keep the craft "airworthy" under Federal Aviation Administration regulations.

### LAWSUITS FILED

Five lawsuits were filed in the Wayne Circuit Court. Whitesell's estate sued Zantop, Lockheed, Bendix, and Eastern. Zantop filed a separate suit against Lockheed and Bendix to recover the cost of the lost aircraft and for contribution and indemnity. The estates of Embry, Bolton, and Figarra each sued Lockheed, Bendix, and Eastern. The suits were consolidated in the trial court.

Eastern, Lockheed, and Bendix settled jointly with the four estates for $2 million. A single insurer paid on behalf of the three parties, and the settlement was not allocated among them.

The Whitesell suit continued against Zantop (but was settled during this appeal). In addition, Eastern continued its claims for contractual indemnification against Zantop, and Zantop proceeded with its claims against Eastern, Bendix, and Lockheed.

### SUMMARY DISPOSITION FOR EASTERN ON INDEMNIFICATION

After discovery was conducted, Eastern moved for summary disposition pursuant to MCR 2.116(C)(10) on the ground that it was entitled to indemnification from Zantop pursuant to the terms of the sales contract for the planes. To support the assertion that the settlement was reasonable and that Eastern had faced potential liability, Eastern's attorney argued that the verticality monitor had been removed after Eastern and two other airlines paid Bendix to prepare the service bulletin that had allowed them to remove the monitor. The court agreed that Eastern faced liability and ordered that Zantop indemnify Eastern in the amount of $666,666.66 (one-third of the $2 million settlement). Costs and attorney fees in the amount of $91,108.69 were awarded to Eastern for its defense of the principal action and its prosecution of the indemnification action.

### DEFAULT AND DISMISSAL OF ZANTOP'S CLAIMS DURING TRIAL

Trial of the unresolved Whitesell claim against Zantop and of Zantop's unresolved claims against

Lockheed and Bendix for manufacturing and design defects commenced on October 3, 1989.

During trial, Zantop's attorney asked a witness, "You were involved in OIL 24, weren't you, sir?" "OIL 24" is "Operating Information Letter #24," a document issued by Lockheed three months after the crash that gave information concerning the relationship and use of the Electra's gyros and automatic pilot system. The trial court ruled that counsel's question was a violation of an order in limine restricting questioning about OIL 24 and ordered a default against Zantop in the Whitesell case and dismissal of Zantop's claims against Lockheed and Bendix. The trial court's written opinion supporting its decision also summarized earlier proceedings in which Zantop had violated previous orders and sanctions. The court prohibited Zantop from presenting additional proofs, but allowed Zantop to present closing arguments that afternoon concerning the issue of Whitesell's damages. The following day the jury returned a verdict of $2 million for Whitesell against Zantop.[1]

## MEDIATION SANCTIONS

In light of the dismissal of Zantop's case, Lockheed and Bendix moved for attorney fees and costs as mediation sanctions. The case had been mediated, resulting in an award of $115,000 in favor of Zantop against Lockheed and an award of $115,000 in favor of Zantop against Bendix. Zantop rejected the mediation awards; Lockheed and Bendix accepted them. After mediation, but before trial commenced, Zantop served an offer of judgment upon Lockheed and Bendix, offering to allow a judgment of $825,000 to be entered in favor of

---

[1] The verdict was offset by $300,000 paid to the Whitesell estate in the earlier settlement by Eastern, Lockheed, and Bendix.

Zantop. Lockheed and Bendix did not respond to the offer of judgment. During the hearings on mediation sanctions, Zantop argued that the procedures in the rule relating to offers of judgment should control the determination of fees and costs, because the last-rejected offer had been made under that rule. Zantop argued that because Lockheed and Bendix had failed to present counteroffers under that rule, they were precluded from obtaining fees and costs.

Although Lockheed and Bendix paid their attorneys $95 and $85 an hour respectively, Lockheed in a reply brief for the first time asked that it be awarded attorneys fees of $125 an hour rather than the $95 an hour its attorneys charged. The court ruled that $125 an hour was a reasonable attorney fee and entered three awards of attorney fees and costs against Zantop totaling $769,631.37, Lockheed's and Bendix's awards coming to a total of $289,436.11. Inherent in the court's ruling was a rejection of Zantop's position that the offer of judgment rule controlled.

I

Zantop argues that the trial court erred in failing to apply Florida law to the sales agreement and that Eastern is not entitled to indemnification under Florida law for its own negligence.

The Uniform Commercial Code, MCL 440.1105(1); MSA 19.1105(1), permits parties to a contract to agree on a choice of laws:

> [W]hen a transaction bears a reasonable relationship to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties.

The written sales agreement between Eastern and Zantop provided that the contract was to be interpreted under Florida law. The transaction had a reasonable relation to Florida, because Florida was the home state for Eastern Airlines. The parties' contractual choice of laws therefore was entitled to recognition.

MCR 2.112(J) imposes a notice requirement on parties relying on foreign law:

> A party who intends to rely on or raise an issue concerning the law of
> (1) a state other than Michigan,
> (2) a United States territory, or
> (3) a foreign nation or unit thereof
> must give notice of that intention in his or her pleadings or in a written notice served by the close of discovery.

Although Eastern concedes on appeal that Florida law applies, it argues that notice of Florida law was not given as required by the court rule. The rules "are to be construed to secure the just, speedy, and economical determination of every action and to avoid the consequences of error that does not affect the substantial rights of the parties." MCR 1.105. Obviously, the purpose of MCR 2.112 is to give notice; a party that already has notice should not be heard to complain of a technical violation of the rule. Eastern was aware of the language in the contract it prepared and even argued Florida law in its motion for summary disposition. Thus, Eastern was aware that Florida law controlled the transaction.

Under Florida law, the construction of an indemnity contract is controlled by the general construction rules of contracts. *Benevolent Order of Elks v Delano,* 308 So 2d 615, 617 (Fla App, 1975).

Construction generally is a question of law for the court and is dependent on the intent of the parties from the language of the contract and the circumstances under which it was made. *Id.* at 617. The indemnity provision should be read in harmony with other contractual provisions, *American Employers Ins Co v Taylor,* 476 So 2d 281, 283 (Fla App, 1985), cause dis 485 So 2d 426 (Fla, 1985), and the contract's terms should be given their natural and commonly understood meanings, *Baker & Co v Goding,* 317 So 2d 118, 119 (Fla App, 1975), cert den 328 So 2d 840 (Fla, 1976).

Florida law disfavors indemnification for one's own negligence, and, thus, such contracts will be enforced "only if they express an intent to indemnify against the indemnitee's own wrongful acts in clear and unequivocal terms." *Charles Poe Masonry, Inc v Spring Lock Scaffolding Rental Equip Co,* 374 So 2d 487, 489 (Fla, 1979).[2]

The principal Florida case cited by Zantop, *University Plaza Shopping Center, Inc v Stewart,* 272 So 2d 507 (Fla, 1973), involved a question of indemnification under a lease. A gas pipeline burst beneath a leased barber shop, killing a barber. The landlord sought indemnification from the tenant barber shop under a lease provision that stated that the "Tenant shall indemnify and save harmless the Landlord from and against any and all claims for damages." *Id.,* at 508. The court examined the nation's divided cases involving indemnification of an indemnitee's own negligence and suc-

---

[2] We decline to rely on federal decisions as urged by Eastern, because the Florida Supreme Court has criticized the federal courts for crafting their own differing view of Florida's law of indemnification without certifying the questions to the Florida court. See *University Plaza Shopping Center, Inc v Stewart,* 272 So 2d 507, 510-511 (Fla, 1973). Federal decisions do not authoritatively state the law, but merely attempt to determine how a state court would rule. *Nat'l Equipment Rental, Ltd v Miller,* 73 Mich App 421, 426; 251 NW2d 611 (1977).

cinctly categorized them as two lines of authority: one that finds that general language such as "any and all claims" is not sufficient to find an intent to indemnify, and a second that holds that the language "any and all claims" is "crystal clear" and shows an intent to indemnify in any situation, including those involving an indemnitee's own negligence. *Id.* at 509-510. The court sided with the former,[3] stating: "In our judgment, the use of the general terms 'indemnify . . . against any and all claims' does not disclose an intention to indemnify for consequences arising *solely* from the negligence of the indemnitee." *Id.* at 511. The court was careful to limit its holding to cases of sole negligence. *Id.* at 509, n 1, 511-512.

The Florida Supreme Court had occasion recently to revisit the *University Plaza* decision when a lower court held that a less stringent standard applied to indemnification contracts where *joint* negligence was alleged. In *Cox Cable Corp v Gulf Power Co,* 591 So 2d 627 (Fla, 1992), the Florida Supreme Court determined that the public policy arguments supporting a stringent standard in sole negligence cases also applied in joint negligence cases and extended the holding of *University Plaza* to cases where the indemnitor and indemnitee are jointly negligent.

An effective use of specific language to indemnify against the indemnitee's own negligence is shown in *Joseph L Rozier Machinery Co v Nilo Barge Line, Inc,* 318 So 2d 557, 557-558 (Fla App, 1975), cert den 328 So 2d 843 (Fla, 1976), in which the Florida Court of Appeals examined an agreement to indemnify "against all loss, liability and expense . . . as a result of the maintenance, use,

---

[3] Michigan subscribes to the latter view. *Vanden Bosch v Consumers Power Co,* 394 Mich 428; 230 NW2d 271 (1975); *Pritts v J I Case Co,* 108 Mich App 22, 30; 310 NW2d 261 (1981).

operation, storage, erection, dismantling, servicing or transportation of Equipment other than Vehicles, whether such bodily injury, death, or property damage are due or claimed to be *due to any negligence of Lessor,* employees or agents of Lessor or any other person." (Emphasis added.) An injured person sued the lessor for negligently maintaining a piece of equipment that malfunctioned. The trial court ruled that the indemnification agreement did not extend to negligence that occurred before the equipment was leased and allowed the case to proceed to the jury with a special instruction concerning whether any negligence was committed before, or after, the date the equipment was leased. The court of appeals agreed with the trial court that the language of the agreement made it clear that the lessee would indemnify *even for the negligence of the lessee* (although the court found no intention to use the lease date as a determinant of the negligence that would be indemnified). 318 So 2d 559. The lessee was ordered to indemnify the lessor for the lessor's own negligence.

The specific language of *Rozier* should be contrasted with the "general" language typically used in indemnity agreements that the Florida courts have found to be insufficient to provide indemnification for one's own negligence: "Contractor . . . agrees to hold the Company free and unharmed against *any liabilities whatsoever* resulting in connection with performance of the described work," *Florida Power & Light Co v Elmore,* 189 So 2d 522 (Fla App, 1966) (emphasis added); "Licensee shall indemnify, protect and save the Licensor forever harmless from and against *any and all claims and demands* for damages to property and injury or death to any persons . . . which may arise out of or be caused by the erection, maintenance, pres-

ence, use or removal of said attachments," *Cox Cable Corp, supra* at 629 (emphasis added); "Tenant shall indemnify and save harmless the Landlord from and against *any and all claims* for damages to goods, wares, merchandise and property in and about the demised premises and from and against any and all claims for any personal injury or loss of life in and about the demised premises," *University Plaza Shopping Center, Inc, supra* at 508-509 (emphasis added); "Lessee assumes all responsibility for *claims asserted by any person whatever* growing out of the erection and maintenance, use or possession of said equipment, and agrees to hold the Company harmless from all such claims," *Charles Poe Masonry, Inc, supra* at 489 (emphasis added).

In the case at bar, the purchase agreement's indemnification section, ¶ 6.1, provides:

> Upon technical acceptance of the Aircraft, Engines and other property sold hereunder, Buyer shall assume all responsibility in connection therewith and all risks incident to the storage, maintenance, repair, use, ownership (after conveyance of title) or modification thereof, and Buyer agrees to indemnify, defend and hold harmless Eastern, its directors, officers, employees, agents and representatives *from and against all claims,* liability, loss or expense, including legal fees and court costs, arising out of or in connection with this Agreement and/or the Aircraft, including, but not limited to claims of employees of Buyer, claims arising out of injury, death or property damage, direct and/or consequential, to any person or entity. [Emphasis added.]

Eastern urges that the paragraph should be read in harmony with the next paragraph in the purchase agreement, ¶ 6.2:

> Buyer agrees to maintain liability insurance with limits of at least $30,000,000 per occurrence, and hull insurance equal to the Base Price until the same is paid in full to Eastern. Such insurance shall (1) name Eastern, its officers, directors, employees, agents and representatives as Additional Insureds, (2) contain a Breach of Warranty clause in favor of the Additional Insureds, (3) contain Waiver of Subrogation clause in favor of the Additional Insureds, (4) contain a standard Cross Liability Clause, (5) specifically state that the indemnification agreement stated above is insured as a contractual obligation of Buyer's insurers and (6) contain a provision requiring Buyer's insurers to provide Eastern with a written notice of cancellation or adverse material change in such insurance.

A later section of the agreement provided that the insurance would remain in effect for two years or until the aircraft had undergone an overhaul.

It is clear that, standing alone, ¶ 6.1 contains the same general language the Florida courts have routinely rejected. Nowhere does ¶ 6.1 specifically state that Zantop may be liable for Eastern's negligence. Under the rulings of *University Plaza* and *Cox Cable,* therefore, ¶ 6.1 is insufficient under Florida law to create a duty of indemnification for Eastern's own sole or joint negligence.

Under Florida law, the insurance provision of ¶ 6.2 also does not create an obligation to indemnify. In *Nat Harrison Associates, Inc v Florida Power & Light Co,* 162 So 2d 298, 300 (Fla App, 1964), cert den 166 So 2d 754 (Fla, 1964), the court of appeals held that a clause requiring a contractor to purchase insurance to protect a power company showed that the parties contemplated that the power company would remain potentially liable for injuries—otherwise, there was no need for insurance. In the case at bar, the same could be said of ¶ 6.2.

More important, however, ¶ 6.2 again never states that Zantop may be liable for Eastern's negligence (although it may make Zantop's insurer liable under contract to Eastern, an issue not raised in this appeal). Combining ¶ ¶ 6.1 and 6.2 does not result in a "clear and unequivocal" statement that Zantop agreed to indemnify Eastern for Eastern's own negligence as required under the Florida decisions.

Eastern urges that parol evidence should be allowed to demonstrate that the parties intended that Zantop would indemnify Eastern for Eastern's own negligence. Although Michigan law may support such proofs, Florida law does not for the simple reason that parol evidence is introduced only when a contract term is ambiguous—yet indemnification agreements must be "clear and unequivocal" (i.e., unambiguous). The Florida courts further hold that any ambiguity should be interpreted against the drafter (Eastern). See *Nat Harrison Associates, Inc,* 162 So 2d 300.

Eastern's contention that the rules imposed in Florida apply only to lease contracts and not to sales contracts is not supported by case law. Many of the indemnification cases involve nonlease situations—for example, service and maintenance contracts and common carriers. Some involve the installation of equipment that presumably resulted from a sale of goods. See, e.g., *Jackson v Florida Weathermakers, Inc,* 55 So 2d 575 (Fla, 1951) (installation of air conditioner); *L Luria & Son, Inc v Alarmtec Int'l Corp,* 384 So 2d 947 (Fla App, 1980) (installation and service of burglar alarm); *Leadership Housing Systems of Florida, Inc v T & S Electric, Inc,* 384 So 2d 733 (Fla App, 1980) (residential installation of electrical wires).

Eastern admitted its own negligence when, after settling with the estates, it took the position that

its request that Bendix write a service bulletin to allow the removal of the verticality monitor created tort liability in Eastern. As a matter of Florida law, Eastern is not entitled to indemnification for its own negligence. The trial court's ruling that Eastern was entitled to indemnification is reversed.[4] The trial court's order awarding Eastern attorney fees and costs is dependent upon the finding of Zantop's liability for indemnification; accordingly, it is also reversed.

## II

We next turn to Zantop's argument that the trial court erred in dismissing its case during trial because it never violated the order in limine and, even if it did, dismissal was too harsh. A court's decision to dismiss an action is reviewed under the abuse of discretion standard. *Woods v Murdock,* 177 Mich App 210, 213; 441 NW2d 63 (1989).

Although Zantop argues that trial counsel did not violate the order in limine, that order prohibited any testimony concerning OIL 24 until an offer of proof could be made outside the jury's presence:

> IT IS FURTHER ORDERED that with respect to Lockheed's Motion in Limine number 9, that if OIL 24 is to be used as a subsequent remedial measure, then same is not admissible pursuant to MRE 407. If OIL 24 is to be used for any purpose other than to show negligence, then same must be brought to the attention of the court outside of the presence

---

[4] This decision renders moot Zantop's argument that the settlement between Eastern and the estates was not reasonable or was not reasonably allocated among the settling parties.

Zantop also appealed the partial summary disposition granted in favor of Lockheed and Bendix of Zantop's claim that it is entitled to seek reimbursement of the amounts it paid Eastern. Because Zantop is not obligated to indemnify Eastern, the continuation of a claim for reimbursement of those amounts by Lockheed and Bendix becomes moot.

of the jury, to establish such other purpose, prior to admissibility or testimony regarding OIL 24.

An order in limine is an instruction not to mention certain facts unless the court's permission is first obtained. *Lapasinskas v Quick,* 17 Mich App 733, 737, n 1; 170 NW2d 318 (1969). Counsel mentioned OIL 24. His question was intended to elicit testimony about OIL 24—even if the testimony, in conjunction with the question, would be a mere "yes" or "no."[5]

Recognizing the harsh nature of dismissal, this Court has established standards by which to measure the sanction. In *Dean v Tucker,* 182 Mich App 27, 32-33; 451 NW2d 571 (1990), we summarized some of the factors that a court should consider before imposing the sanction of dismissal: (1) whether the violation was wilful or accidental; (2) the party's history of refusing to comply with previous court orders; (3) the prejudice to the opposing party; (4) whether there exists a history of deliberate delay; (5) the degree of compliance with other parts of the court's orders; (6) attempts to cure the defect; and (7) whether a lesser sanction would better serve the interests of justice. The *Dean* Court also noted that "[t]his list should not be considered exhaustive." *Id.* at 33.

Lockheed and Bendix argue that they were prejudiced by having to object to various techniques employed by Zantop's counsel, which would result in juror suspicion that they were trying to keep information from the jury. Lockheed and Bendix also argue that Zantop's tactics could have led the jury to believe that it, like Zantop, was free to ignore the court's instructions or orders. Although these problems certainly might have arisen, we

---

[5] We should note, however, that Zantop's attorney did not instruct the witness that he wanted only a "yes" or "no" answer—he just asked the question.

question whether they constitute a tangible form of prejudice that can be identified and objectively evaluated in particular cases. The fact that counsel's tactics allegedly led to a two-week delay and continued a pattern of dilatory behavior also does not, by itself, establish prejudice.

Nonetheless, prejudice is not the sole factor to be considered. The record demonstrates that Zantop violated many pretrial orders, including:

—Failing to cooperate in the filing of a joint pretrial statement and filing late the trial brief that could be filed in lieu of the joint statement.

—Filing an incomplete trial brief that did not contain a concise statement of theories or address evidentiary issues and that failed to set forth details that should have been disclosed.

—Failing to set forth proposed jury instructions concerning the theories of the parties.

—Filing the proposed jury instructions late.

—Failing to properly identify some exhibits as required, but rather relying on generalized descriptions of exhibits, such as "maintenance records, bankers' boxes", "two black binders and some rubberbanded records", "Large green suspension folder", "three envelopes", and "envelope" being unsure of what some of the exhibits were.

—Failure to respond to various pretrial motions in writing.

—Filing a late response to the court's order to provide information concerning its lost profits claim although the first scheduled trial date was approaching.

—Failing to respond directly to the court's questions about theories.

—Continuing to question a witness concerning an issue that counsel had represented to the court he had abandoned.

—Asking a witness questions that approached violation of the order in limine regarding other aircraft accidents, resulting in a need to cleanse the testimony.

—Asking a witness questions concerning abandoned theories, causing the court to give cautionary instructions and remind counsel of the limitations on his theories.

—Arguing for a directed verdict on the basis of theories presented in a joint pretrial statement in which Zantop's counsel had failed to participate.

The court responded to these violations on October 2, 1989, with a strongly worded order restricting Zantop's theories, claims, and defenses. The court also assessed penalties and attorney fees of $25,000. Nonetheless, after paying the penalties, Zantop's counsel again violated an order of the court by asking the OIL 24 question.

Lockheed and Bendix argue, quite correctly, that the court was able to remedy many of the abuses, but was unable to deter them. Zantop's argument on appeal attempts to isolate OIL 24 by saying the trial court's decision to dismiss was based solely on that violation. In fact, there was a history of significant violations, and raising OIL 24 in front of the jury was the last straw.[6] Although in a long and complex case there is more opportunity for error to occur—and mindful of the drastic nature of the penalty imposed—the history of this particular case shows that the trial court did not abuse its discretion when, "all else having failed," it imposed the "death penalty" on Zantop's case.

The trial court's dismissal of Zantop's case is affirmed.

[6] The trial court's written opinion adopted by reference the earlier order in which penalties and attorney fees of $25,000 were imposed. That earlier order also detailed the previous violations of the court's orders and the court rules.

## III

Zantop next argues that the court erred in granting partial summary disposition to Lockheed and Bendix before trial, because it was entitled to continue its claim for common-law indemnification against tortfeasors Lockheed and Bendix to recover the amounts it paid Eastern. Zantop argues that it was free of active negligence in the claims by the estates of Embry, Bolton, and Figarra because, as Zantop employees subject to the exclusive remedy provisions of the workers' compensation laws, they were precluded from alleging active negligence against Zantop. Lockheed and Bendix counter that Zantop is not entitled to recover monies it paid Eastern under contractual indemnification.

However, because we have ruled that Eastern was not entitled to indemnification, this aspect of Bendix and Lockheed's argument fails. Therefore, because Zantop is not obligated to indemnify Eastern, the continuation of a claim for reimbursement of those amounts by Lockheed and Bendix becomes moot.

## IV

On cross appeal, Lockheed and Bendix argue that the trial court should have granted their motions for directed verdicts against Zantop at the close of the Whitesell estate's proofs. In particular, they assert that arguments made by Zantop's attorney in his own motion for a directed verdict against the Whitesell estate (in which he argued there was no evidence that the plane was not airworthy) constituted an admission which defeated his client's case against Lockheed and Bendix. They also argue that the testimony of a Zan-

top executive called as an adverse witness in Whitesell's case in chief defeated Zantop's claims against Lockheed and Bendix.

Counsel's arguments are not evidence. SJI2d 3.04. Counsel's arguments also did not constitute a stipulation of facts pursuant to MCR 2.116(A), as argued by Lockheed and Bendix. *Ortega v Lenderink,* 382 Mich 218, 222-223; 169 NW2d 470 (1969). The fact that counsel argued for a directed verdict on Whitesell's claim does not mean that he admitted Zantop had no case against Lockheed and Bendix. *Id.* at 223. The trial court denied Zantop's motion for a directed verdict against Whitesell, finding there was sufficient testimony regarding the condition of the aircraft and the nonfunctioning gyro to allow the jury to consider Whitesell's claim. Accordingly, there was sufficient evidence to support Zantop's claim against Lockheed and Bendix.

Concerning the claims that the testimony of the Zantop official defeated the case against Lockheed and Bendix, Zantop had not yet presented its proofs. Although the Zantop official testified as an adverse witness in Whitesell's case in chief that there was no defect, Zantop had not presented its proofs, which may have included better qualified expert opinions contrary to its official's opinion. See MRE 607 (credibility of witness may be attacked by any party).

The trial court did not err in denying the Lockheed and Bendix motions for directed verdicts against Zantop.

V

Zantop next argues that the trial court erred in imposing mediation sanctions in favor of Lockheed and Bendix. Zantop argues that the rule relating

to offers of judgment controls and that, under that rule, no sanctions would be imposed because Lockheed and Bendix failed to respond to the offers. We agree.

Zantop served an offer of judgment on Monday, April 24, 1989. Trial was scheduled to begin on Monday, May 22, 1989, although the parties later stipulated to adjourn. Zantop's offer of judgment was valid and timely under the ruling of *Magnuson v Zadrozny,* 195 Mich App 581, 588; 491 NW2d 258 (1992). We need not address Zantop's alternative argument that the last date an offer may be made is determined by the *actual* trial date rather than the *scheduled* trial date (an argument supported by 2 Martin, Dean & Webster, Michigan Court Rules Practice, p 453).

Lockheed and Bendix never accepted the offer of judgment. Accordingly, they rejected it under MCR 2.405(C)(2)(b). Earlier Zantop had rejected the mediation evaluations that Lockheed and Bendix had accepted. Where there have been rejections under both the mediation and offer of judgment rules, the rejection that occurred last controls. MCR 2.405(E). *Coy v Richard's Industries, Inc,* 170 Mich App 665, 674; 428 NW2d 734 (1988).

Lockheed and Bendix argue that because the case did not result in a "verdict," Zantop is unable to rely upon the offer of judgment rule.

The Supreme Court has cautioned that the offer of judgment and mediation rules each contain "precisely worded" and "explicit" definitions, and that the rules should be interpreted in accordance with their precise language. *Freeman v Consumers Power Co,* 437 Mich 514, 519; 473 NW2d 63 (1991). The Court in *Freeman* also held that it had not intended to amend the offer of judgment rule by implication when it expressly had amended the mediation rule.

It is correct that a verdict was never rendered as defined in MCR 2.405(A)(4) because the case was dismissed on motion. In *Parkhurst Homes, Inc v McLaughlin,* 187 Mich App 357, 365; 466 NW2d 404 (1991), this Court determined, through a comparison with the mediation rule, that the court rules did not intend a disposition by motion to be a "verdict" for purposes of awarding costs under the offer of judgment rule.

MCR 2.405(D) states that "[i]f an offer is rejected, costs are payable as follows." The rule then states when costs are payable (e.g., 2.405[D][3]), and when they are not (e.g., 2.405[D][2]). It is therefore clear that the offer of judgment rule can apply even if the rule goes on to deny costs. In other words, the fact that the rule grants no costs in particular circumstances does *not* mean that the rule is to be ignored. When both the offer of judgment rule and the mediation rule are invoked, the later rejection controls which one will provide a remedy—*if any.*

Lockheed and Bendix argue that this leads to an inequitable result in which Zantop escapes sanctions after having "forced" a trial. We note, however, that Lockheed and Bendix also "forced" a trial when they rejected Zantop's offer of judgment. In retrospect, if Bendix and Lockheed were dissatisfied with Zantop's offer, their remedy was to counter it, not ignore it. *Coy, supra.*

The offer of judgment rule controls the imposition of attorney fees in this case. That rule denies Lockheed and Bendix a remedy. Therefore, the trial court's award of attorney fees and costs as mediation sanctions is reversed.[7]

---

[7] As a result of this decision, we need not reach the troubling question whether the court could order payment of attorney fees that were in excess of the actual hourly rate charged to the parties. We also do not reach Zantop's argument that the trial court erred in

CONCLUSION

In Nos. 116838, 116839, and 116840, we reverse the order granting Eastern summary disposition of its indemnity claim against Zantop, because the purchase agreement does not contain clear and unequivocal language evidencing Zantop's intent to indemnify Eastern for Eastern's own negligence under Florida law.

In No. 123537, we affirm the judgment for Lockheed and Bendix against Zantop, because the trial court did not commit error when it dismissed Zantop's claims after repeated violations of the court's orders and rules. The appeal in No. 123940 becomes moot.

In Nos. 129496 and 129497, we reverse the orders awarding Lockheed and Bendix as mediation sanctions attorney fees and costs assessed against Zantop, because the provisions of the offer of judgment rule controls and those provisions deny that remedy under these circumstances.

Affirmed in part and reversed in part.

---

failing to conduct an evidentiary hearing with regard to the reasonableness of the fees and that the court impermissibly assessed nonstatutory costs contrary to *Taylor v Anesthesia Associates of Muskegon, PC,* 179 Mich App 384; 445 NW2d 525 (1989).