*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

IRA HENRY JOHNATHAN WATERS,

        Plaintiff-Appellee,

v

RACHEL NICHOLE STALTER,

        Defendant-Appellant.

UNPUBLISHED
May 11, 2023

No. 363955
Osceola Circuit Court
Family Division
LC No. 2018-015280-DC

Before: MARKEY, P.J., and MURRAY and FEENEY, JJ.

PER CURIAM.

Defendant appeals by right the trial court's order denying her motion to change the domicile of the minor child, arguing that the trial court misapprehended the applicable law and inappropriately ignored evidence. We disagree and affirm.

## I. BACKGROUND

The parents were never married, and their relationship ended less than a year after the child was born, whereupon plaintiff filed a complaint for custody. The parents ultimately stipulated to joint legal custody and a parenting-time arrangement under which the child generally lived with defendant, but plaintiff received alternating weekends and three non-overnight days a week. The stipulated order further provided that the parenting-time schedule would switch to alternating weeks when the child began kindergarten. Defendant subsequently married, she and her husband had two children and then proposed to move to Texas, where, by all accounts, her husband had the ability to make significantly more money than he could in Michigan. Defendant attempted to persuade plaintiff to move, which plaintiff considered but ultimately rejected, concluding that his prospects were better in Michigan.

Eventually, defendant filed a petition to change the child's domicile to Texas, proposing a new parenting-time arrangement under which plaintiff would receive an increased number of contiguous overnights with the child but, for obvious reasons, no further thrice-weekly daytime visits. Defendant generally contended, *inter alia*, that the available schools in the area to which she proposed to move were superior to the schools in plaintiff's vicinity, that the greater diversity in Texas would be beneficial to the child in light of her husband's and the child's half-siblings'

-1-

race, that there were much better social and extracurricular opportunities available in Texas, that her husband's increased income would ultimately benefit the child, that the superior educational opportunities for herself in the Texas area would also benefit the child, and that her proposed parenting-time schedule would improve the child's relationship with plaintiff. Following a two-day hearing before a referee and a de novo review hearing, the trial court concluded that defendant's proofs were unpersuasive, so it denied her petition.

## II. STANDARDS OF REVIEW AND PRINCIPLES OF LAW

This Court has set forth the applicable standard of review as follows:

> This Court reviews a trial court's decision regarding a motion for change of domicile for an abuse of discretion and a trial court's findings regarding the factors set forth in MCL 722.31(4) under the 'great weight of the evidence' standard. An abuse of discretion is found only in extreme cases in which the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will or the exercise of passion or bias. This Court may not substitute its judgment on questions of fact unless the facts clearly preponderate in the opposite direction. However, where a trial court's findings of fact may have been influenced by an incorrect view of the law, our review is not limited to clear error. A trial court's findings regarding the existence of an established custodial environment are reviewed under the "great weight of the evidence" standard and must be affirmed unless the evidence clearly preponderates in the opposite direction. This Court reviews questions of law de novo. [*Rains v Rains*, 301 Mich App 313, 324-325; 836 NW2d 709 (2013) (quotation marks, citations, and alterations omitted).]

In addition, pursuant to MCL 722.28, this Court must affirm all judgments and orders on appeal "unless the trial judge made findings of fact against the great weight of the evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." *Safdar v Aziz*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 358877); slip op at 5 (quotation marks and citations omitted). "A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction." *Stoudemire v Thomas*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 360441); slip op at 4 (quotation marks and citation omitted). Unpreserved evidentiary errors are reviewed for plain error affecting substantial rights. *Wischmeyer v Schanz*, 449 Mich 469, 483; 536 NW2d 760 (1995). "To demonstrate a plain error, a party must show: (1) that an error occurred, (2) that the error was plain, and (3) that the plain error affected [the party's] substantial rights. The third factor requires [the party] to show [they were] prejudiced by the error such that it affected the outcome of the proceedings . . . ." *Mr Sunshine v Delta College Bd of Trustees*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 358042); slip op at 2 (quotation marks omitted; alterations and ellipsis in original).

The legal principles applicable to a motion to change domicile are:

> A motion for a change of domicile essentially requires a four-step approach. First, a trial court must determine whether the moving party has established by a preponderance of the evidence that the factors enumerated in MCL 722.31(4), the

so-called *D'Onofrio*[1] factors, support a motion for a change of domicile. Second, if the factors support a change in domicile, then the trial court must then determine whether an established custodial environment exists. Third, if an established custodial environment exists, the trial court must then determine whether the change of domicile would modify or alter that established custodial environment. Finally, if, and only if, the trial court finds that a change of domicile would modify or alter the child's established custodial environment must the trial court determine whether the change in domicile would be in the child's best interests by considering whether the best-interest factors in MCL 722.23 have been established by clear and convincing evidence. [*Rains*, 301 Mich App at 325.]

In addition, if the trial court enters an order that modifies its prior custody order and has the practical effect of altering the child's established custodial environment, it must apply the heightened burden of proof and procedural prerequisites applicable to changes of custody. *Stoudemire*, ___ Mich App at ___; slip op at 4-5, 7-8.

Trial courts may take judicial notice of facts "not subject to reasonable dispute," meaning "either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." MRE 201(b). Trial courts are not, however, generally obligated to go beyond what was provided to them by the parties. See *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 377-379; 775 NW2d 618 (2009); *In re Forfeiture of Bail Bond*, 209 Mich App 540, 550; 531 NW2d 806 (1995). Statements and arguments by attorneys are not evidence. *Doster v Covenant Med Ctr, Inc*, 509 Mich 910, 911; 971 NW2d 605 (2022); *Zantop Int'l Airlines, Inc v Eastern Airlines*, 200 Mich App 344, 364; 503 NW2d 915 (1993). A trial court's "record" includes documents, papers, and attachments to documents filed with the clerk of court. MCR 1.109(A)(1)(a)(*i*); MCR 1.109(A)(1)(b)(*i*); MCR 7.210(A)(1).

## III. DEFENDANT'S SCHOOL EVIDENCE

We first reject defendant's argument that the trial court inappropriately rejected her "Exhibit E," which the trial court accurately described as "a typewritten summary of information purportedly available on niche.com." Defendant prepared a summary of seven school districts, four in Texas and three in Michigan, enumerating their rankings according to an entity called Niche; each school district contains a URL seemingly pointing to the specific school district page on the niche.com website, and little else. Defendant extensively argues about the exhibit's admissibility, notwithstanding her failure to seek its formal admission during the referee hearing. However, because she attached it to her petition, it was clearly part of the record. Furthermore, it is manifest from the trial court's opinion that it actually considered Exhibit E, but was simply

---

[1] *D'Onofrio v D'Onofrio*, 144 NJ Super 200, 206-207; 365 A2d 27 (Ch Div, 1976).

unpersuaded of its value. For all practical intents and purposes, the trial court treated it as admitted.[2]

To the extent defendant argues that the trial court should have given Exhibit E greater weight, we disagree. Nothing actually contained in Exhibit E explains what Niche is or why niche.com should be trusted. Furthermore, nothing in Exhibit E explains what the rankings *mean*. On appeal, defendant attaches to her brief a printout of a page from niche.com, apparently explaining "where our data comes from." This is an improper attempt to expand the record. See *Barnard Mfg Co, Inc*, 285 Mich App at 381. To the extent defendant suggests that the trial court should have conducted its own research extrapolating from Exhibit E, we again disagree. See *Barnard Mfg Co, Inc*, 285 Mich App at 377-379; *In re Forfeiture of Bail Bond*, 209 Mich App at 550. And, to the extent she implies that the trial court could have taken judicial notice of niche.com's data sources, exhaustively reviewing niche.com's data sources in an effort to determine how it reached its conclusions would hardly constitute *ready* determination. MRE 201(b)(2). Again, nothing explains how niche.com draws its conclusions.[3]

Exhibit E presented to the trial court nothing more than defendant's own summary of unexplained rankings of schools that had apparently been downloaded from a website of unknown pedigree. The trial court's rejection of Exhibit E as unreliable was neither legal error nor against the great weight of the evidence.

## IV. ANALYSIS OF STATUTORY CHANGE OF DOMICILE FACTORS

On appeal, defendant specifically challenges only two of the factors enumerated under MCL 722.31(4). She argues that the trial court failed to make factual findings and inappropriately rejected her evidence regarding factor (a), "[w]hether the legal residence change has the capacity to improve the quality of life for both the child and the relocating parent," MCL 722.31(4)(a); and engaged in a legally incorrect analysis of factor (c), which considers whether defendant's proposed plan would "preserv[e] and foster[] the parental relationship between the child and each parent," MCL 722.31(4)(c).

## A. FACTOR (a)

Initially, the trial court's opinion and order plainly refutes defendant's contention that the trial court made no findings regarding factor (a). Indeed, it accepted her contention that the move to Texas would improve *her* life. We agree with defendant that, all other things being equal, her husband's increased income in Texas could improve the child's life, as the referee acknowledged

---

[2] We note that although the trial court mentioned hearsay, it did so in the context of separately rejecting defendant's testimony about what defendant claimed plaintiff had submitted regarding the Texas schools.

[3] There is little caselaw addressing niche.com, but in one of the few cases discussing it, there was evidence presented that niche.com's data was factually incorrect. *Waltsak v Waltsak*, unpublished opinion of the Superior Court of New Jersey, Appellate Division, issued July 20, 2021 (Case No. A-0427-19), pp 8-11.

(and the trial court implicitly accepted). This Court has "recognized that an increase in a parent's income may improve a child's quality of life." *Yachcik v Yachcik*, 319 Mich App 24, 41; 900 NW2d 113 (2017). Nevertheless, an increased income can be outweighed by other considerations, such as disruption to the life of the child. *Id*. at 44. It is therefore not dispositive by itself.

And here, the trial court appropriately discounted defendant's evidence purporting to show the superiority of the Texas schools. Nor did the trial court inappropriately shift the burden of proof to plaintiff in light of her proofs, instead, the trial court simply found her proofs unpersuasive. For example, defendant's evidence that certain extracurricular activities would be available in Texas was not accompanied by evidence that they were unavailable in Michigan, her evidence regarding free speech therapy for the child in Texas was accompanied by evidence that the child had never actually been diagnosed as needing speech therapy and that she had not looked for that therapy in Michigan, and her evidence that Texas suburbia would be superior to rural living was accompanied by her admission that plaintiff lived "in town."

With respect to defendant's argument that the trial court discounted the value of the "greater diversity" in Texas, the parties essentially disagreed only about whether it is sufficient to teach the child about other cultures without necessarily having firsthand exposure to them. Although there was no evidence that the child has actually interacted with any of the children in the area of plaintiff's house, it was also not clear to what extent the child would have had the opportunity to do so under the existing parenting-time arrangement.

MCL 722.31(4)(a) also refers to the capacity to *improve* the child's life. In the context of child-custody disputes, it is not disputed that there is great value in maintaining sibling bonds. See *Weichmann v Weichmann*, 212 Mich App 436, 439-440; 538 NW2d 57 (1995). Nevertheless, there is also value in maintaining a child's bond with extended family and ties to an existing location, *Yachcik*, 319 Mich App at 44, and moving to Texas could break the existing bond the child has with her family in Michigan.[4] In effect, it was incumbent on defendant to show that the disruptions to the child's life would be outweighed by improvements to the child's life, and the trial court found that she did not do so.

Finally, the trial court properly declined to rule on whether rural or suburban lifestyles were objectively "better." As the trial court noted, there are benefits to both rural and suburban living, and whether one area provides better opportunities for a child can only be proven by evidence, and the evidence defendant presented did not sufficiently persuade the trial court that a move to Texas would improve the child's life. And, the fact that the trial court did not comment on every single piece of evidence presented does not constitute error. *Yachcik*, 319 Mich App at 38; see also *Rains*, 301 Mich App at 329. In summary, we agree with the referee's observation, which the trial court implicitly adopted, that there was some "give and take on both sides" regarding factor (a), but the trial court's conclusion that defendant ultimately failed to persuade that factor (a) favored a change of domicile was not against the great weight of the evidence.

---

[4] In discussing this point, the trial court appropriately noted that it would not permit defendant to engineer a crisis to justify a change in domicile. See *Gagnon v Glowacki*, 295 Mich App 557, 568; 815 NW2d 141 (2012).

## B. FACTOR (c)

Defendant correctly observes that "the inquiry under factor (c) is not which plan, the current visitation plan or the proposed schedule, is the best plan." *McKimmy v Melling*, 291 Mich App 577, 584; 805 NW2d 615 (2011). Instead, the question is whether defendant's proposed plan would "preserv[e] and foster[] the parental relationship between the child and each parent," MCL 722.31(4)(c). However, it stands to reason that the current parenting-time plan should be considered because the current parenting-time plan yields insight into the nature of "the parental relationship previously enjoyed by the nonrelocating parent." *McKimmy*, 291 Mich App at 584 (quotation marks and citation omitted).

Nothing in the trial court's opinion suggests that it improperly compared the relative merits of the two plans. The trial court appropriately considered the fact that the "relationship" to be "preserved and fostered" included a significant amount of regular and consistent weekly daytime visitation between plaintiff and the child. Although defendant's proposed parenting-time plan would award plaintiff a greater number of contiguous overnights, plaintiff would be interacting much less with the child overall, and he would be interacting with her on a much less regular and consistent basis. Furthermore, plaintiff testified that he regularly attends medical appointments with the child, which he would no longer be able to do. We have previously found no error in a trial court's conclusion that radically restructuring the quantity and quality of interaction between a parent and a child precluded a finding that the proposed move was favored under factor (c). *Grew v Knox*, 265 Mich App 333, 341; 694 NW2d 772 (2005).

Defendant points out that "the separation can be diminished by the use of modern communication technology." *Rittershaus v Rittershaus*, 273 Mich App 462, 468; 730 NW2d 262 (2007). However, a mitigating factor is not necessarily a substitution. Defendant herself, albeit in the context of discussing getting to know teachers, expressed the belief that electronic communications were an inadequate substitute for in-person interactions. We hold that it was not against the great weight of the evidence for the trial court to conclude that plaintiff's current relationship with the child could not be sufficiently maintained under defendant's proposed parenting-time plan. We, therefore, cannot conclude that the trial court erred by denying defendant's petition.

## V. ESTABLISHED CUSTODIAL ENVIRONMENT

Defendant argues that the trial court erred by entering an order that had the effect of changing the child's established custodial environment, thereby obligating it to conduct the heightened analysis attendant to changing custody.

As set forth in *Rains*, no issues regarding a child's custodial environment need be considered *unless* the trial court determines that a change of domicile is proper. Because the trial court concluded that a change of domicile was not warranted, it logically concluded that it was not required to consider the child's custodial environment. Stated differently, custodial-environment and best-interests concerns only arise if the trial court *enters an order modifying a prior custody order*. See *Stoudemire*, ___ Mich App at ___; slip op at 4-5, 7-8. The trial court did nothing of the sort—it denied defendant's petition, and nothing more. As the trial court recognized, defendant's decision to move was altering the status quo; the trial court's order did not. Indeed, if

-6-

the trial court had granted the petition, *that* outcome *would* have triggered an obligation to determine the child's established custodial environment and engage in an analysis of the best-interests factors. *Rains*, 301 Mich App at 325.

Affirmed.

/s/ Jane E. Markey
/s/ Christopher M. Murray
/s/ Kathleen A. Feeney