CUTTER *v.* POWERS.

1. PRINCIPAL AND AGENT—EVIDENCE—SPECIAL QUESTION—FINDING OF JURY.

In an action for money alleged to have been paid to defendant by plaintiff's decedent to be applied to the payment of a specific debt, evidence *held*, to sustain the finding of the jury, in answer to a special question, that

defendant was not acting as agent of a third party in receiving the money.

2. SAME—SPECIAL AGENT.

When defendant accepted the money with instructions to pay a specific debt, he was acting as the agent of plaintiff's decedent.

3. SAME—AGENT OF BOTH PARTIES

It is permissible for the agent of one party to be appointed by the adverse party as his agent for certain purposes, and each party will then stand in the relation of principal to the agent as to the matters entrusted to the agent, and as to those alone.

4. SAME—SPECIAL AGENT—LIABILITY OF AGENT.

Where a principal places money in the hands of an agent to pay a debt when ordered, and the agent refuses to obey such orders, he becomes liable to the principal, whether the instructions are violated through mistake or design.

5. WITNESSES — MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED—OPPOSITE PARTY.

Although the third party, for whom defendant claimed to be acting as agent, was not a party to the record, he had a pecuniary interest in the subject-matter of the litigation, and was an opposite party within the statute barring his testimony as to transactions with plaintiff's decedent.

6. EVIDENCE—HEARSAY—RELEVANCY—ADMISSIBILITY.

The third party not being present when the money in question was paid to defendant, and what occurred then and there being the crucial and vital question in the case, the court might have excluded his testimony as irrelevant and immaterial.

7. DAMAGES—DUTY TO MINIMIZE.

Where there was no question that decedent owed the debt for the payment of which the money was paid to defendant, when decedent ascertained that the debt had not been paid, it was his duty, instead of entering into litigation to avoid its payment, to pay it, and thus make his damages as small as practicable, and the judgment in his favor should have been limited to the amount paid, with interest.

Error to Kent; Perkins, J. Submitted January 30, 1918. (Docket No. 178.) Decided March 27, 1918.

Assumpsit by Linnie Cutter against Frank J. Powers for money had and received. Judgment for plaintiff. Defendant brings error. Affirmed conditionally.

*P. H. Walsh* (*Frank J. Powers,* of counsel), for appellant.

*Grant Sims,* for appellee.

STONE, J. This suit originated in justice's court. The declaration was in assumpsit and consisted of a single special count stating the claim of the plaintiff, in substance, as follows:

That whereas, in the month of July, 1914, Charles Cutter was indebted to the Holland Furnace Company, a corporation, in the sum of $145 for the price and value of a furnace sold and delivered by said company to said Charles Cutter, and for certain work and labor performed by it in installing the furnace in the said Cutter's house; and the said Cutter desiring and intending to pay to the said company the said sum of money, did, in the said month of July, deliver over to the custody and possession of the defendant and intrusted him with the sum of $145 for the sole purpose of, and with instructions to said defendant, to immediately pay over and deliver said money to the said furnace company in payment of the said debt, and for no other purpose; which moneys and funds said defendant then and there so had and received, and agreed to pay over and deliver the same accordingly to said company in payment and satisfaction of said debt; and that he took upon himself the execution of said trust. But notwithstanding said agreement upon the part of said defendant, he has since then committed the following breach of said trust, that is to say, he afterwards, and in violation of said trust which he had so assumed and agreed to execute and perform, did neglect and refuse to pay and deliver said sum of money

and funds, or any part thereof, to said company in payment of said debt; and, upon demand, also refused to deliver the said money and funds, or any part thereof, to this plaintiff. That the said company thereafter sued said Charles Cutter in the circuit court for the sum of $145 and interest to recover the debt aforesaid which was the sum that the said defendant was to deliver in money and funds to said company in payment thereof; that said Charles Cutter died testate on or about December 18, 1914, while said suit was pending, and his estate was duly probated in the probate court for the county of Kent; that after the death of said Charles Cutter said action was revived and continued against the said Charles Cutter's estate; and the executrix of the said will, under the advice of her counsel, appeared in and defended the said action; that after a trial in the circuit court aforesaid, judgment was rendered against the estate for the said $145 and costs and interest, amounting in all to $207 or thereabouts, which judgment, including the costs and interest, the said estate has paid to the furnace company. That the plaintiff was the heir at law and sole legatee of said Charles Cutter, now deceased, and entitled to all the assets of said estate; that by an order of said probate court in the due administration of said estate, the residue thereof was duly assigned to the plaintiff, among other assets being the said claim for the said moneys so had and received by said defendant, as herein alleged; and also for the claim of said estate for the costs and interest sustained by it in defending said claim of the said company, which damages, costs and interest were suffered and occasioned by negligence, breach and default of the said defendant in the execution of the trust as aforesaid; that plaintiff now owns said claim, is entitled to receive the same from the said defendant, and any and all damages in the

premises accruing by reason of said breach of said trust.

Plaintiff by said declaration demanded judgment for compensation and damages for said breach of trust covering said sum of $145, with interest and costs of said litigation. The plea was the general issue.

Upon the trial of the case in the circuit court (to which the plaintiff had appealed from an adverse judgment in justice's court), it appeared that on or about May 1, 1914, Cutter sold to one Egan his interest in a land contract in a certain hotel property at Berlin, Michigan; that the title to this hotel property was owned in fee by one Greiner. In making said sale and transfer Charles G. Turner acted as the attorney for said Cutter, and the defendant acted as attorney for Egan.

There were certain debts owing by said Cutter, supposed to be about $700. It was claimed that it was represented by said Cutter to Egan that all payments on the land contract, which was assigned by Cutter to Egan, of interest and instalments of principal had been paid up to May 1, 1914. The defendant further claimed that about the middle of May, 1914, Greiner informed Egan that the April payment on the land contract amounting to $85.83 and the last six months' interest on said contract, amounting to $75, making in all $160.83 up to May 1, 1914, had not been paid by Cutter. It also appeared that there was an outstanding note and indebtedness of about $145 due the Holland Furnace Company from Cutter, and there was evidence that this fact was brought to the attention of the defendant; that the defendant, in the interest of his client, Egan, approached Mr. Turner, the attorney for Mr. Cutter, and called his attention to said furnace company's claim, which was represented by a note retaining title in the furnace. It, in substance, was testified to by Mr. Turner that he called Cutter's attention

to this furnace debt, and that one day soon thereafter, Cutter brought to him $145 to pay said furnace company's indebtedness; that he, Turner, handed this money, consisting in part of a check and in part in currency, over to the defendant, and said to him:

"Mr. Powers here is the money for that furnace, that Holland furnace, and you take it and settle the matter up. * * * I told him here is the money to pay the Holland Furnace Company for the furnace that Mr. Cutter had not completed payments on. You take it and pay the Holland Furnace Company";

and that defendant took the money.

Some time after this it came to the attention of Mr. Turner that the Holland Furnace Company claim had not been settled. Whereupon, according to Mr. Turner's testimony, he had a conversation with the defendant and said: "What about that money that I paid you for the Holland Furnace Company, that $145.00;" that the defendant avoided the matter and claimed to be very busy, but that in another conversation, the same day, the defendant finally admitted that he had received the money. The testimony of Mr. Turner was corroborated by that of a young lady, a stenographer in his office, who testified that she was present and heard the conversation, and saw the money paid over to defendant.

The claim of the furnace company not having been paid, it instituted a suit against Mr. Cutter for the amount due it upon the furnace. Pending that suit Mr. Cutter died. It was revived in the name of his executrix and finally went to judgment. The amount of the judgment was $158.45, and costs taxed at $61.15. The claim was finally satisfied by the plaintiff paying the sum of $210.90 in full settlement of the judgment.

It was the claim of the plaintiff upon the trial of the instant case that Mr. Cutter, acting through Mr. Turner as his attorney, made the defendant his agent for

the payment of the $145 to the Holland Furnace Company. The defendant testified that the money which he received was for another and entirely different purpose; that nothing was said to him about the furnace indebtedness, but that when it came to his attention from Mr. Egan that the interest and installment of principal had not been paid by Cutter to Greiner covering all amounts due up to May 1, 1914, the following occurred:

"The next time that I had any relation to this matter was some time in the first part of June. I had heard from Egan some time in June about the contract, and a short time after I heard from Egan, and I think in the month of June, Miss Mellema, Turner's stenographer, came to my office and paid the $145 in the form of a certificate of deposit. She said to me: 'Here is this $145 to pay Egan on what Cutter owed Egan for the April payment, and the last six months' interest on the contract.' She asked me if I knew about it. I told her I knew about it as Egan called me up about it. She laughed. I said to her I thought Cutter had paid everything up to the first of May. She said evidently he did not. I said yes, evidently he did not. And she gave me the $145 certificate of deposit and said also that Egan and Cutter had made a deal, and she told me that Cutter owed $160.83 to Egan, that this $145 and the buggy, which Egan accepted, paid up Cutter's debt. I turned the $145 certificate of deposit over to Egan and did not charge either one anything for it."

He testified that subsequently, and before any demand was made on him by the plaintiff, he paid the money over to Egan as his attorney. It will thus be seen that there was here a sharp conflict in the testimony as between Turner and the stenographer upon one side, and the defendant upon the other.

In the course of the trial the court ruled that the testimony of Mr. Egan of matters equally within the knowledge of Mr. Cutter could not be received under the statute. All of the offers of testimony of Egan

were upon collateral matters, and all of but little probative force. Error is assigned upon refusal of the court to receive this testimony.

At the close of the testimony the defendant moved for a directed verdict in his favor, for the following reasons:

(1) The testimony shows that the plaintiff paid the money to the defendant as agent for a third person, and the proofs show that defendant has paid the money over to said third person.

(2) For the reason that the plaintiff's claims, and her testimony shown that the money was paid to the defendant as an agent, and paid to the agent for a specific purpose; and the proofs show that the defendant transferred the money to said third person, his principal.

This motion was denied by the court and exception duly taken.

There were requests to charge covering the same ground; and also that, as matter of law, the jury ought to disregard the taxed bill of costs of $61.15 in determining the measure of damages.

In the course of its charge to the jury the trial court used the following language:

"There is but one question in this case, and only one for your consideration, and that is, the question of fact which you are to determine under the evidence. That question is whether the claims of the plaintiff as to the purpose for which this money was turned over to Mr. Powers are true, or whether the claim of the defendant, Mr. Powers, is true, that it was turned over to him for his client, Mr. Egan. That the money was turned over is unquestioned; it is an undisputed fact in this case; that the transaction between Mr. Cutter and Mr. Egan took place and was completed, is undisputed in this case. That the land contract was assigned to Mr. Egan, and that upon the back of the contract was indorsed the various payments showing the amount due at the time the assignment was made, are all undisputed facts in the case. Narrowed down

to its ultimate limits, the case resolves itself into a question of whether Mr. Turner and his stenographer are telling the truth, or whether Mr. Powers is telling the truth.

"(The fact that the defendant Powers was the agent and attorney for Mr. Egan in the transaction between Mr. Egan and Mr. Cutter will not prevent him from also becoming the agent of the adverse party, Mr. Cutter. In other words, he may, under proper circumstances, act as the agent for both parties. The question, as I have said, is one of fact, whether or not the defendant accepted this money, this $145, with the express understanding and agreement, as the plaintiff claims, that it was to be used exclusively by the defendant for the payment of the Holland Furnace Company's claim.

"As a matter of law, and I so instruct you, the agent of one party to the transaction may be appointed by the adverse party as his agent also, for certain purposes, and each party will stand in the relation of principal and agent as to the matters thus intrusted to such agent, and to those alone. Such appointment of the agent of the adverse party must be established by a preponderance of the evidence. What was said and done by the parties and the circumstances of the case as disclosed by the evidence should be taken into consideration by the jury)."

The following special question was submitted to the jury at the request of the defendant: "Did the plaintiff or her representatives pay the money to the defendant as Egan's agent?" To which the jury answered: "No."

The jury returned a verdict for $231.20 damages, and judgment was entered accordingly. There was a motion for a new trial based upon many reasons, among others: Because the court erred in its charge to the jury upon the measure of damages. This motion was denied by the court and exception duly taken. The defendant has brought the case here for review. The assignments of error raise many questions, among others: That the court erred in refusing to grant de-

fendant's motion for a new trial on each of the grounds therein stated; that it erred in that part of the charge embraced in parentheses.

The propositions relied upon by him, and on which error is assigned, are as follows:

(1) Was the defendant acting as agent of Egan when he received the money?

(2) If he was acting as such agent when he received the money, and paid the money over to his principal, can an action be maintained against the defendant?

(3) Errors of the court in allowing certain answers to stand, and in instructing the jury that certain facts were true when said facts were in dispute. .

(4) Did the court err in not allowing Egan to testify as to transactions between himself and the plaintiff's decedent?

(5) Was the verdict against the weight of the evidence?

As stated by the trial court to the jury, and as demonstrated by an examination of the record, the case presented a single material issue, and that was: Under what circumstances, and under what instructions, if any, was the money paid to the defendant by Mr. Turner, or his stenographer, as the case may be? It was clearly testified to by Mr. Turner and his stenographer, that the money was turned over to defendant for the express purpose of applying it upon the indebtedness to the furnace company, and thus relieving the property from any question of lien upon it by reason of that indebtedness. The defendant testified that the money so paid over by the stenographer was for an entirely different purpose. Somebody is woefully mistaken, or has sworn untruthfully in the case. That question was submitted to the jury squarely. In the course of the trial the testimony that was introduced went far afield, and brought in collateral matters in great detail of the deal between Cutter and Egan in the sale of the contract of the hotel property.

The first and second points urged by defendant may be disposed of together. An examination of this record shows that there was evidence to sustain the answer of the jury to the special question submitted by the defendant. That being so, the question seems to be settled whether the defendant was acting as the agent of Egan when he received the money. That the defendant had been acting generally as the attorney for Egan, cannot be questioned. There ought to be no dispute about the law upon this subject. If the plaintiff's position is true, and that question seems to have been settled by the verdict of the jury, the defendant, when he accepted this money with instructions to pay it over to the furnace company, was acting as the agent of Mr. Cutter. It is permissible, and often the agent of one party to a transaction, is appointed by the adverse party as his agent for certain purposes, and each party will then stand in the relation of principal to the agent as to the matters by him entrusted to the agent, and as to those alone. 2 C. J. p. 448. This rule has been frequently asserted by this court.

In *Adams Mining Co.* v. *Senter*, 26 Mich. 73, 77, Justice CAMPBELL, speaking for the court, said:

"The question next arises, how far the double agency of Captain Frue affected his relations to his employers and to third persons. * * * The authority of agents may, where no law is violated, be as large as their employers choose to make it. There are multitudes of cases where the same person acts under power from different principals in their mutual transactions."

See, also, *Colwell* v. *Iron Co.*, 36 Mich. 51; *Michigan Slate Co.* v. *Railroad Co.*, 101 Mich. 14, 28, and cases there cited.

The doctrine is also well settled that where a principal places money in the hands of an agent to pay a

debt when ordered, if the agent refuses to obey such orders he becomes liable to the principal, and this is true whether the instructions are violated through mistake or design. We think there was ample testimony to warrant the charge, upon that branch of the case.

We have examined the alleged errors of the court in allowing certain answers to stand, and the instruction to the jury complained of, and think they are without merit. The rulings, and instruction present no question of reversible error.

Coming to the fourth question argued: Did the court err in not allowing Egan to testify to transactions between himself and plaintiff's decedent? We find no error of the court in this ruling. It is true that Egan was not a party to the record. It was the claim of the defendant, and the case was tried by him upon the theory, that he was the agent of Egan. It is well settled in this State that the opposite party does not necessarily mean a party to the record; but it means any person whose interests are, as matter of fact, antagonistic to the interests of those for whose benefit the statute was passed. Egan had as direct a pecuniary interest in the subject-matter of the litigation as though he had been a party to the record. He had a direct pecuniary interest in the result of the case. *O'Neil* v. *Greenwood,* 106 Mich. 572, and cases there cited; *Laird* v. *Laird,* 115 Mich. 352; *Chaddock* v. *Chaddock,* 134 Mich. 48; *Ayres* v. *Short,* 142 Mich. 501; *Abbott* v. *Jones,* 164 Mich. 598.

There is another reason why we think the ruling of the court would not in any event have been prejudicial error. There was no claim upon the trial that Egan was present when the money in question was paid to the defendant. What occurred then and there, was the crucial and vital question in the case. All of the matters sought to be introduced by the witness Egan were collateral matters, and the court might well have

ruled them out as being irrevelant and immaterial. We are satisfied that the verdict was not against the weight of the evidence.

We think the verdict was too large, and that the measure of damages adopted by the court in its charge was erroneous. The evidence as to costs was objected to by defendant. There never appeared to be any question that Mr. Cutter owed the Holland Furnace Company for the furnace. It was his debt. It is the claim of the plaintiff, representing her deceased husband, that the defendant, as the agent of her husband, did not obey the instructions, and pay the money in question to the Holland Furnace Company. There seems to have been no question as to the merits of the claim of the furnace company. When Mr. Cutter ascertained that the money which he had given to his agent, the defendant, to be paid to the furnace company had not been so applied, it was his duty then to have paid the furnace company the amount due it, and thus have made his damages as small as practicable. Instead of that he entered into a litigation with the Holland Furnace Company, resulting in a bill of costs which the plaintiff paid. In other words, the amount of money which the defendant owes the plaintiff upon any theory of the case, cannot exceed the sum of $145 with interest thereon at five per cent. per annum from July, 1914, to May 15, 1917, the date of the judgment. That amount, which we compute to be $165.54, should have been the extent of the plaintiff's damages, and the costs in the furnace company case should have been eliminated. We find no other error in the record. If the plaintiff shall, within 30 days after the filing of this opinion, remit that portion of this judgment for damages in excess of $165.54, the judgment as thus modified will stand affirmed, but without costs to the plaintiff in this court. If such

excess is not remitted within the time above specified, the judgment will be reversed and a new trial granted, with costs to the appellant.

BIRD, MOORE, STEERE, FELLOWS, and BROOKE, JJ., concurred. OSTRANDER, C. J., and KUHN, J., did not sit.