NIPPA v BOTSFORD GENERAL HOPSITAL

Docket No. 229113. Submitted May 14, 2002, at Detroit. Decided June 21, 2002, at 9:00 A.M. Leave to appeal sought.

Sally Nippa, as personal representative of the estate of Robert Nippa, deceased, brought an action in the Oakland Circuit Court against Botsford General Hospital, alleging medical malpractice as a result of the treatment of the decedent in the defendant hospital by two doctors who are board certified in infectious diseases and one doctor who is board certified in general surgery. The plaintiff initially filed the action against "Botsford General Hospital Group" and filed with the complaint an affidavit of merit, as required by MCL 600.2912d(1), signed by a doctor who is not board certified in either general surgery or infectious diseases. The plaintiff filed a first amended complaint against "Botsford General Hospital" that included the same allegations as the initial complaint. The court, Jessica R. Cooper, J., granted the defendant's motion for a more definite statement, and the plaintiff filed a second amended complaint. The defendant moved for involuntary dismissal, alleging that the affidavit of merit filed by the plaintiff did not comply with the statutory requirements. The court granted the motion, disagreeing with the plaintiff's argument that because the hospital was the only named defendant in the action, the plaintiff was not required to produce an affidavit of an expert board certified in the areas of infectious diseases and general surgery. The plaintiff appealed.

The Court of Appeals *held*:

1. The word "party" in MCL 600.2169, the statutory provision governing the admission of expert evidence in medical malpractice actions, should not be interpreted narrowly to denote solely a party to the record proceeding. The Legislature did not intend to limit the word "party" in § 2169 to parties of record. The construction proposed by the plaintiff for the statute would not further the purpose of the statute or the object it seeks to accomplish.

2. At the time the plaintiff filed her amended pleadings it was well settled by the Michigan Supreme Court that subsection 2169(1) was constitutionally valid. The plaintiff's argument that her failure to provide an affidavit from a physician board certified in infectious diseases is excusable because of her reasonable belief

that subsection 2169(1) had been declared unconstitutional by the Court of Appeals is not persuasive.

Affirmed.

WHITBECK, C.J., dissenting, stated that the word "party" in subsection 2169(1)(a) is a legal term of art that has acquired a particular meaning in the law. Applying that meaning in this matter would result in a sensible, rather than an absurd, result. The statute should be applied as the Legislature wrote it. Here, Botsford is the party defendant and although its doctors may be its agents and interested persons, they are not parties. The statute did not require the plaintiff to file an affidavit of merit from a board-certified physician with specialties matching those of the three physicians. The plaintiff is required to file an affidavit by a doctor who meets all the standards in subsection 2169(2). The order granting involuntary dismissal should be reversed.

ACTIONS — MEDICAL MALPRACTICE — WORDS AND PHRASES — PARTIES.

The term "party," as used in the statutory provision governing the admission of expert evidence in medical malpractice actions, is not limited to parties of record in the action (MCL 600.2169).

*Worsham, Victor & Ahmad, P.C.* (by *Richard B. Worsham*), for the plaintiff.

*Sullivan, Ward, Bone, Tyler & Asher, P.C.* (by *Ronald S. Lederman* and *Gerard J. Andree*), for the defendant.

Before: WHITBECK, C.J., and O'CONNELL and METER, JJ.

O'CONNELL, J. In this medical malpractice action, plaintiff appeals as of right from the trial court's June 6, 2000, order of involuntary dismissal. We affirm.

Plaintiff initially filed the present action in the Oakland Circuit Court on July 12, 1999, against "Botsford General Hospital Group" alleging that defendant was negligent in its treatment of plaintiff's decedent, Robert Nippa, following a colonoscopy in April 1998.[1] As

---

[1] Plaintiff's decedent died in July 1998.

required by MCL 600.2912d(1), plaintiff filed with the complaint an affidavit of merit by Arnold Markowitz, M.D. On August 17, 1999, plaintiff filed a first amended complaint against "Botsford General Hospital" that included the same allegations as the initial complaint. On August 26, 1999, defendant filed a motion for more definite statement, arguing that the first amended complaint was "vague, non-specific," and did not give defendant reasonable indication of the nature of the case it was called on to defend. Following a hearing, the trial court granted defendant's motion in an order entered on October 7, 1999.

As a result of the trial court's order, plaintiff filed a second amended complaint on October 13, 1999. In the second amended complaint plaintiff alleged that defendant was liable for Dr. Wiley Fan, Dr. Gerald Blackburn, and Dr. Harris Mainster's negligent treatment of the decedent. Defendant moved for involuntary dismissal of the second amended complaint on April 5, 2000, pursuant to MCR 2.112(L), arguing that dismissal was warranted on the basis of plaintiff's deficient affidavit of merit. Specifically, defendant contended that the affidavit of merit filed with the original complaint did not comply with MCL 600.2169(1) because Dr. Markowitz was not board certified in either general surgery or infectious diseases. According to the record, both Dr. Fan and Dr. Blackburn are board certified in infectious diseases, and Dr. Mainster is board certified in general surgery. Although Dr. Markowitz specializes in infectious diseases, he is not board certified in this area of medicine.

In response to defendant's motion, plaintiff argued that pursuant to the plain language of MCL

600.2169(1)(a), Dr. Markowitz was competent to testify against defendant although he was not board certified in infectious diseases because Dr. Fan, Dr. Blackburn, and Dr. Mainster were not "parties" to the action as set forth in the statute. In other words, plaintiff maintained that because the hospital, the only named defendant to the action, was not board certified in infectious diseases, plaintiff was not required to produce an expert witness with like qualifications. The court conducted a hearing on defendant's motion on May 17, 2000. At the conclusion of the hearing the trial court granted defendant's motion without articulating in detail its reasoning.[2] Plaintiff now appeals as of right.

We review for an abuse of discretion a trial court's decision to dismiss an action. *Vicencio v Jaime Ramirez, MD, PC*, 211 Mich App 501, 506; 536 NW2d 280 (1995); *Zantop Int'l Airlines, Inc v Eastern Airlines*, 200 Mich App 344, 359; 503 NW2d 915 (1993). However, the present appeal also requires us to interpret a statutory provision, a question we review de novo. *Donajkowski v Alpena Power Co*, 460 Mich 243, 248; 596 NW2d 574 (1999).

> The rules of statutory construction are well established. The foremost rule, and [this Court's] primary task in construing a statute, is to discern and give effect to the intent of the Legislature. *Murphy v Michigan Bell Telephone Co*, 447 Mich 93, 98; 523 NW2d 310 (1994). See also *Nation v W D E Electric Co*, 454 Mich 489, 494; 563 NW2d 233 (1997). This task begins by examining the language of the statute

---

[2] It appears from a review of the transcript of the May 12, 2000, hearing that the period of limitation controlling plaintiff's medical malpractice claim had not expired at the time of the hearing. Moreover, the trial court noted that plaintiff was free to refile her claim with the appropriate affidavit of merit.

itself. The words of a statute provide "the most reliable evidence of its intent . . . ." *United States v Turkette*, 452 US 576, 593; 101 S Ct 2524; 69 L Ed 2d 246 (1981). If the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written. No further judicial construction is required or permitted. *Tryc v Michigan Veterans' Facility*, 451 Mich 129, 135; 545 NW2d 642 (1996). Only where the statutory language is ambiguous may a court properly go beyond the words of the statute to ascertain legislative intent. *Luttrell v Dep't of Corrections*, 421 Mich 93; 365 NW2d 74 (1984). [*Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999).]

In interpreting statutory language, this Court must consider the "plain meaning of the critical word or phrase" as well as its " 'placement and purpose' " in the statute. *Id.* at 237, quoting *Bailey v United States*, 516 US 137, 145; 116 S Ct 501; 133 L Ed 2d 472 (1995). Further, as Justice MARKMAN, writing for the majority of our Supreme Court recently explained in *Robertson v DaimlerChrysler Corp*, 465 Mich 732, 748; 641 NW2d 567 (2002), we must construe the statute at issue in a manner that does not ignore, render nugatory, or treat as surplusage specific words in the legislation. See also *Brown v Genesee Co Bd of Comm'rs (After Remand)*, 464 Mich 430, 437; 628 NW2d 471 (2001); *Decker v Flood*, 248 Mich App 75, 82; 638 NW2d 163 (2001). Likewise, where the statute does not define a word, we are compelled to ascribe to it the common and ordinary meaning. MCL 8.3a; *Herald Co v Bay City*, 463 Mich 111, 118; 614 NW2d 873 (2000); *Massey v Mandell*, 462 Mich 375, 380; 614 NW2d 70 (2000). However, where the word is "a legal term of art" that has acquired a particular meaning in the law, we are required to abide by that definition.

*Id.* at 386 (CORRIGAN, J., concurring); *People v Law*, 459 Mich 419, 425, n 8; 591 NW2d 20 (1999); see also *Consumers Power Co v Public Service Comm*, 460 Mich 148, 163; 596 NW2d 126 (1999).

Moreover, in *Brown, supra* at 437, our Supreme Court, quoting its earlier decision in *Tyler v Livonia Public Schools*, 459 Mich 382, 390-391; 590 NW2d 560 (1999), recently instructed lower courts to ascertain the meaning of a word by examining it carefully in its proper context in the statute: "Contextual understanding of statutes is generally grounded in the doctrine of *noscitur a sociis*: '[i]t is known from its associates,' see Black's Law Dictionary (6th ed) p 1060. This doctrine stands for the principle that a word or phrase is given meaning by its context or setting."

The pertinent statutes at issue are found in the Revised Judicature Act (RJA), MCL 600.101 *et seq.* As relevant to the present appeal, MCL 600.2912d(1) provides:

> Subject to subsection (2), the plaintiff in an action alleging medical malpractice or, if the plaintiff is represented by an attorney, the plaintiff's attorney shall file with the complaint an affidavit of merit signed by a health professional who the plaintiff's attorney reasonably believes meets the requirements for an expert witness under [MCL 600.2169]. The affidavit of merit shall certify that the health professional has reviewed the notice and all medical records supplied to him or her by the plaintiff's attorney concerning the allegations contained in the notice and shall contain a statement of each of the following:
>
> (a) The applicable standard of practice or care.
>
> (b) The health professional's opinion that the applicable standard of practice or care was breached by the health professional or health facility receiving the notice.

(c) The actions that should have been taken or omitted by the health professional or health facility in order to have complied with the applicable standard of practice or care.

(d) The manner in which the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice.

The statutory provision governing the admission of expert evidence in medical malpractice actions is found in Chapter 21 of the RJA. MCL 600.2169[3] provides:

(1) In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria:

(a) If the *party* against whom or on whose behalf the testimony is offered is a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty as the *party* against whom or on whose behalf the testimony is offered. *However, if the party against whom or on whose behalf the testimony is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty.*

(b) Subject to subdivision (c), during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following:

(*i*) The active clinical practice of the same health profession in which the *party* against whom or on whose behalf the testimony is offered is licensed and, if that *party* is a specialist, the active clinical practice of that specialty.

(*ii*) The instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the *party* against whom or on whose behalf the testimony

---

[3] The Legislature amended MCL 600.2169 in 1993. See 1993 PA 78.

is offered is licensed and, if that *party* is a specialist, an accredited health professional school or accredited residency or clinical research program in the same specialty.

(c) If the *party* against whom or on whose behalf the testimony is offered is a general practitioner, the expert witness, during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following:

(*i*) Active clinical practice as a general practitioner.

(*ii*) Instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the *party* against whom or on whose behalf the testimony is offered is licensed.

(2) In determining the qualifications of an expert witness in an action alleging medical malpractice, the court shall, at a minimum, evaluate all of the following:

(a) The educational and professional training of the expert witness.

(b) The area of specialization of the expert witness.

(c) The length of time the expert witness has been engaged in the active clinical practice or instruction of the health profession or the specialty.

(d) The relevancy of the expert witness's testimony.

(3) This section does not limit the power of the trial court to disqualify an expert witness on grounds other than the qualifications set forth in this section.

(4) In an action alleging medical malpractice, an expert witness shall not testify on a contingency fee basis. A person who violates this subsection is guilty of a misdemeanor.

(5) In an action alleging medical malpractice, all of the following limitations apply to discovery conducted by opposing counsel to determine whether or not an expert witness is qualified:

(a) Tax returns of the expert witness are not discoverable.

(b) Family members of the expert witness shall not be deposed concerning the amount of time the expert witness

spends engaged in the practice of his or her health profession.

(c) A personal diary or calendar belonging to the expert witness is not discoverable. As used in this subdivision, "personal diary or calendar" means a diary or calendar that does not include listings or records of professional activities. [Emphasis supplied.]

On appeal, plaintiff raises a novel, yet ultimately unsuccessful, legal argument concerning the proper interpretation of the word "party" in § 2169. Put rather simply, the thrust of plaintiff's argument is that the word "party" refers only to those litigants who are parties of record. Therefore, according to plaintiff, because the board-certified physicians who treated plaintiff's decedent are not named in the action, plaintiff, by virtue of her artful drafting of the second amended complaint, is absolved from complying with the requirements of § 2169. On the other hand, defendant asserts that plaintiff's argument is merely an attempt to circumvent MCL 600.2169. Defendant further contends that to interpret the statute in the manner plaintiff suggests would render an absurd result.[4] Moreover, defendant asserts that the purpose underlying the enactment of § 2169, to ensure that expert witnesses testifying against physicians who are board certified in a particular specialty also are board certified in that specialty, would be thwarted if this Court were to accept plaintiff's argument.

In *Tate v Detroit Receiving Hosp*, 249 Mich App 212, 218-219; 642 NW2d 346 (2002), this Court,

---

[4] As an initial matter, we note that our Supreme Court has cautioned that the use of the "absurd result" rule of statutory construction is inappropriate where the language of a statute is unambiguous. *People v McIntire*, 461 Mich 147, 155-158; 599 NW2d 102 (1999); *Stone v Michigan*, 247 Mich App 507, 525, n 37; 638 NW2d 417 (2001).

quoting our Supreme Court's decision in *McDougall v Schanz*, 461 Mich 15, 25, n 9; 597 NW2d 148 (1999) (*McDougall II*), recently articulated the purpose underlying the Legislature's enactment of § 2169:

> The Legislature enacted § 2169 to "make sure that expert witnesses actually practice or teach medicine. In other words, to make sure that experts will have firsthand practical expertise in the subject matter about which they are testifying. In particular, with the malpractice crisis facing high-risk specialists, such as neurosurgeons, orthopedic surgeons and ob/gyns, this reform is necessary to insure that in malpractice suits against specialists the expert witnesses actually practice in the same specialty. This will protect the integrity of our judicial system by requiring real experts instead of 'hired guns.' " [Quoting *McDougall v Eliuk*, 218 Mich App 501, 509, n 1; 554 NW2d 56 (1996) (*McDougall I*) (Taylor, P.J., dissenting), rev'd 461 Mich 15; 597 NW2d 148 (1999).]

The *Tate* Court also observed that by its plain terms, "§ 2169 requires an expert witness to possess the same specialty as that engaged in by the defendant physician during the course of the alleged malpractice." *Tate, supra* at 220. See also *VandenBerg v VandenBerg*, 231 Mich App 497, 502; 586 NW2d 570 (1998) (Observing that § 2912d, requiring filing of affidavit of merit with complaint to commence medical malpractice suit, was designed to "deter frivolous medical malpractice claims.").

MCL 600.2169 does not define the word "party." However, we are not persuaded by plaintiff's argument that we should interpret the word "party" narrowly to denote solely a party to the record proceeding. Indeed, it is well settled that we are to liberally and broadly construe the provisions of the RJA to effectuate its remedial purposes. MCL 600.102;

*H J Tucker & Associates, Inc v Allied Chucker & Engineering Co*, 234 Mich App 550, 560; 595 NW2d 176 (1999). "In its broadest meaning the word 'party' includes one concerned with, conducting, or taking part in any matter or proceeding, whether he is named or participates as a formal party or not." *Fong Sik Leung v Dulles*, 226 F2d 74, 81 (CA 9, 1955) (Boldt, J., concurring in the result). However, we would be remiss if we did not acknowledge, as plaintiff points out in her brief on appeal, that the word "party" is a legal term of art that has acquired a particular meaning in the law. Specifically, Black's Law Dictionary (6th ed), p 1122, defines "party" in the following manner:

> *A person concerned or having or taking part in any affair, matter, transaction, or proceeding, considered individually.* A party to an action is a person whose name is designated on record as plaintiff or defendant. Term, in general, means one having right to control proceedings, to make defense, to adduce and cross-examine witnesses, and to appeal from judgment.
>
> Party is a technical word having a precise meaning in legal parlance; it refers to those by or against whom a legal suit is brought, whether in law or in equity, the party plaintiff or defendant, whether composed of one or more individuals and whether natural or legal persons; all others who may be affected by the suit, indirectly or consequently, are persons interested but not parties. [Emphasis supplied; citations and internal quotation marks omitted.]

See *Dearborn Heights School Dist No 7 v Wayne Co MEA/NEA*, 233 Mich App 120, 127; 592 NW2d 408 (1998) ("A party is one who was directly interested in the subject matter, and who had a right to defend in, or control, the proceedings, and who had a right to appeal from the judgment."); *In re Lafayette Towers*,

200 Mich App 269, 272-275; 503 NW2d 740 (1993) (construing "party" in § 8408 of the RJA, MCL 600.8408, to include a named party's attorney).

In spite of the unique meaning the word "party" has acquired in the law, we do not agree with plaintiff that by referring to "party," the Legislature indicated its intention that the requirement that an expert witness share the same board certification as one he intends to testify against extend only to named parties to the record. In the instant case, a careful review of the second amended complaint reflects that plaintiff is alleging liability on the part of defendant under a theory of vicarious liability. As our Supreme Court observed in *Theophelis v Lansing General Hosp*, 430 Mich 473, 483; 424 NW2d 478 (1988) (GRIFFIN, J.), "[v]icarious liability is indirect responsibility imposed by operation of law." Further, a master may not be held liable under a vicarious liability theory where the servant is not liable. *Rogers v J B Hunt Transport, Inc*, 244 Mich App 600, 608; 624 NW2d 532 (2001), lv gtd 465 Mich 902 (2001). This is because the principal has not committed a tortious act, and is therefore not a "tortfeasor." *Theophelis, supra* at 483.

In our view, the acceptance of plaintiff's interpretation of the statute would "effectively repeal" § 2169, rendering it nugatory and meaningless, an interpretation that this Court must avoid. *Scarsella v Pollak*, 461 Mich 547, 550; 607 NW2d 711 (2000). Similarly, if we were to accept plaintiff's argument, plaintiffs in medical malpractice actions could routinely avoid the requirements of § 2169 by declining to name individual physicians as defendants. In a different context, our Supreme Court has expressed its dissatisfaction with such gamesmanship, specifically where parties

draft pleadings to avoid the procedural medical malpractice requirements. *Dorris v Detroit Osteopathic Hosp Corp*, 460 Mich 26, 43-47; 594 NW2d 455 (1999); see also *Stover v Garfield*, 247 Mich App 456, 467-469; 637 NW2d 221 (2001) (O'CONNELL J., dissenting).

Further, we believe that if the Legislature had intended to strictly limit the definition of the word "party" to parties of record as that word is generally defined in the law, it could have so stated. " 'It is a well-known principle that the Legislature is presumed to be aware of, and thus to have considered the effect on, all existing statutes when enacting new laws.' " *Stone v Michigan*, 247 Mich App 507, 521, n 31; 638 NW2d 417 (2001), quoting *Walen v Dep't of Corrections*, 443 Mich 240, 248; 505 NW2d 519 (1993). For example, in other provisions of the RJA, the Legislature has expressly provided that the term "party" refers only to named parties to the proceedings. See, e.g., MCL 600.2159 ("[T]he parties *to any such suit or proceeding named in the record*, and persons for whose benefit such suit or proceeding is prosecuted, or defended, may be witnesses therein . . . .") (emphasis supplied); MCL 600.2162(3)(f) ("In a case in which the husband or wife *is a party to the record in a suit, action, or proceeding* . . . .") (emphasis supplied). Particularly worthy of note is MCL 600.2421b(2), part of Chapter 24 of the RJA dealing with costs, which provides that " '[p]arty' means *a named plaintiff or defendant* involved in the particular civil action . . . ." (Emphasis supplied.)

Moreover, our conclusion that the Legislature's use of the word "party" does not refer solely to named parties of record is supported by our Supreme Court's decision in *Caswell v Smith's Estate*, 263 Mich 390,

405-406; 248 NW 845 (1933), where the majority, quoting *Cutter v Powers*, 200 Mich 375, 386; 166 NW 1029 (1918), and interpreting the term "opposite party" in the dead man's statute,[5] concluded that " '[i]t is well settled in this State that the opposite *party* does not necessarily mean a party to the record; but it means any person whose interests are, as matter of fact, antagonistic to the interests of those for whose benefit the statute was passed.' " (Emphasis supplied.) See also *Seeber v Citizens State Bank of Sturgis*, 7 Mich App 33, 37; 151 NW2d 222 (1967). Accordingly, we reject plaintiff's claim that the word "party" in MCL 600.2169 should be interpreted to refer only to named parties of record, where such a construction would not further the purpose of the statute or the object it seeks to accomplish. *Macomb Co Prosecutor v Murphy*, 464 Mich 149, 158; 627 NW2d 247 (2001).

Finally, plaintiff argues that her failure to provide an affidavit from a physician board certified in infectious diseases is excusable, given her reasonable belief at the time she filed the affidavit that the statute imposing such requirements was unconstitutional. In the lower court, plaintiff presented the affidavit of her attorney, Richard B. Worsham. In the affidavit,

---

[5] The statute at issue in *Caswell*, 1929 CL 14219, provided in pertinent part:

When a suit or proceeding is prosecuted or defended by the heirs, assigns, devisees, legatees, or personal representatives of a deceased person, *the opposite party*, if examined as a witness in his own behalf, shall not be admitted to testify at all to matters which, if true must have been equally within the knowledge of such deceased person. [Emphasis supplied.]

This statutory language was included in the RJA of 1961. See 1961 PA 236, § 2160, but repealed in 1967, when the Legislature enacted MCL 600.2166. See 1967 PA 263; See also MCL 600.2166(1).

Worsham averred that when he filed Markowitz' affidavit of merit on July 12, 1999, he reasonably believed that it complied with the medical malpractice statutory requirements, given that this Court had declared MCL 600.2169(1) unconstitutional.[6] In response, defendant invites this Court to undertake an inquiry into whether our Supreme Court's decision in *McDougall II, supra,* operates retroactively. We decline defendant's invitation because the trial court did not expressly decide this issue, *Fast Air, Inc v Knight,* 235 Mich App 541, 549; 599 NW2d 489 (1999); *Adam v Sylvan Glynn Golf Course,* 197 Mich App 95, 98; 494 NW2d 791 (1992), and because we find plaintiff's argument unavailing on other grounds.[7]

As relevant to plaintiff's argument, MCL 600.2912d(1) provides:

> Subject to subsection (2), the plaintiff in an action alleging medical malpractice or, if the plaintiff is represented by an attorney, the plaintiff's attorney shall file with the complaint an affidavit of merit signed by a health professional who the plaintiff's attorney *reasonably believes* meets the requirements for an expert witness under [MCL 600.2169].

Under the particular circumstances of this case, we reject plaintiff's contention that involuntary dismissal

---

[6] See *McDougall I; Golden v Baghdoian,* 222 Mich App 220; 564 NW2d 505 (1997). The *Golden* Court followed *McDougall I* only because of its "obligation, under Administrative Order No. 1996-4," which required a panel of the Court of Appeals to follow a prior published opinion of another panel issued after November 1, 1990. *Golden, supra* at 224; see also MCR 7.215(I)(1). Although in *McDougall II, supra,* our Supreme Court did not expressly overrule *Golden,* we note that the *Golden* decision, adhering to the holding of *McDougall I,* is of limited value in light of the Supreme Court's pronouncement that subsection 2169(1) is constitutional.

[7] Moreover, plaintiff does not address the issue of retroactivity in her brief on appeal.

should not have been entered because her attorney reasonably believed that the affidavit of merit complied with the medical malpractice procedural requirements. As noted above, plaintiff initially filed the complaint and affidavit of merit on July 12, 1999, eighteen days before our Supreme Court decided *McDougall II, supra*. Therefore, at the time plaintiff filed the complaint, two panels of this Court had held MCL 600.2169(1) unconstitutional. However, plaintiff filed the first amended complaint on August 17, 1999, and the second amended complaint almost two months later on October 13, 1999. Thus, when plaintiff's attorney filed the second amended complaint, our Supreme Court's decision in *McDougall II* pronouncing the constitutional validity of subsection 2169(1) was settled law.

Further, once plaintiff filed the first and second amended complaints, these amended pleadings superseded the original complaint. MCR 2.118(A)(4); *Grzesick v Cepela*, 237 Mich App 554, 562; 603 NW2d 809 (1999).

"§ 838. An amended pleading that is complete in itself and does not refer to or adopt a former pleading as a part of it supersedes or supplants the former pleading, and the prior pleading is considered abandoned and withdrawn. The purpose of this rule [is] to ensure that the court and the opposing parties will be aware of the points at issue.

"§ 839. The original pleading is abandoned and withdrawn by an amendment thereto, and is no longer a part of the pleader's averments. The plaintiff cannot avail himself or herself of the allegations contained in the superseded pleading, unless they are set out or referred to in the amended pleading. This rule applies not only to factual allegations but also to theories of recovery." [*Id.*, quoting 61B Am Jur 2d, Pleading, pp 92-93.]

Likewise, MCL 600.2912d(1) unequivocally provides that the affidavit of merit be filed *with the complaint.* *Scarsella, supra* at 550; *Barlett v North Ottawa Community Hosp,* 244 Mich App 685, 691; 625 NW2d 470 (2001). By the time plaintiff filed the first and second amended complaints, which required the filing of the affidavit of merit as well, the Supreme Court's decision in *McDougall II* had been released. See also *Kowalski v Fiutowski,* 247 Mich App 156, 163; 635 NW2d 502 (2001) (observing that pursuant to MCR 2.112, both the plaintiff's and the defendant's affidavits are part of the pleadings, and when the defendant fails to file the affidavit of defense with an answer, such action results in a failure to plead). In other words, when plaintiff filed the amended pleadings, it was well settled in Michigan that subsection 2169(1) was a constitutionally valid statute. Consequently, plaintiff's claim that she was essentially unaware that she was required to comply with the requirements of MCL 600.2169(1) is disingenuous. Thus, we are not persuaded that the instant case involved a situation where counsel "reasonably, albeit mistakenly, believed that the affiant qualified as an expert witness under § 2169 . . . ." *Decker, supra* at 86 (NEFF, P.J., concurring). Accordingly, the trial court did not abuse its discretion in entering the order of involuntary dismissal.

Affirmed.

METER, J., concurred.

WHITBECK, C.J. (*dissenting*). I respectfully dissent. In my view, the majority disregards the plain language of the law in order to avoid reaching what it considers to be an absurd result. Because the rele-

vant word—"party"—in the relevant statute—MCL
600.2169(1)(a)—is a legal term of art that has
acquired a particular meaning in the law and because
applying that meaning would lead to a sensible, rather
than an absurd, result, I would apply the statute as
the Legislature wrote it. I would, therefore, reverse
the order of the trial court.

### I. BASIC FACTS AND PROCEDURAL HISTORY

As the majority opinion indicates, Sally Nippa
(Nippa) sued Botsford General Hospital, and *only*
Botsford General Hospital, in her capacity as the per-
sonal representative of Robert Nippa's estate. In her
second amended complaint, Nippa alleged that Bots-
ford was liable for the negligent treatment Drs. Wiley
Fan, Gerald Blackburn, and Harris Mainster rendered
to Robert Nippa. With her original complaint, Nippa
filed an affidavit of merit from Dr. Arnold Markowitz.
Botsford sought dismissal under MCR 2.112(L).
Although Dr. Markowitz is board certified in internal
medicine, Botsford pointed out that Drs. Fan and
Blackburn are board certified in infectious diseases
and Dr. Mainster is board certified in general surgery;
accordingly, Dr. Markowitz's board-certified specialty
is not the same as those of Drs. Fan, Blackburn, and
Mainster. In essence, Botsford argued that while Drs.
Fan, Blackburn, and Mainster were themselves not
parties, it was their alleged negligence that was be-
ing imputed to the hospital under a theory of vicar-
ious liability. Therefore, Botsford argued, MCL
600.2169(1)(a) required Dr. Markowitz' board-certified
specialties to match those of the allegedly offending
physicians. The trial court agreed.

## II. STATUTORY PROVISIONS

Two subsections of MCL 600.2169 are at issue here. Subsection 1 provides:

> In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria:
>
> (a) If the *party* against whom or on whose behalf the testimony is offered is a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty as the *party* against whom or on whose behalf the testimony is offered. *However, if the party against whom or on whose behalf the testimony is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty.*[1]

Subsection 2 of this same statute provides:

> In determining the qualifications of an expert witness in an action alleging medical malpractice, the court shall, at a minimum, evaluate all of the following:
>
> (a) The educational and professional training of the expert witness.
>
> (b) The area of specialization of the expert witness.
>
> (c) The length of time the expert witness has been engaged in the active clinical practice or instruction of the health profession or the specialty.
>
> (d) The relevancy of the expert witness's testimony.

### III. STANDARD OF REVIEW

Here, we are interpreting statutory provisions. Therefore, our review is de novo.[2]

---

[1] Emphasis supplied.

[2] *Donajkowski v Alpena Power Co*, 460 Mich 243, 248; 596 NW2d 574 (1999).

IV. STATUTORY INTERPRETATION

The Michigan Supreme Court has recently rearticulated the principles that courts should apply in interpreting statutes. In *Roberts v Mecosta Co General Hosp*,[3] Justice YOUNG, writing for the majority of the Supreme Court, stated that the "anchoring rule of jurisprudence" is that courts are to effect the intent of the Legislature. Justice YOUNG then stated:

> To do so, we begin with an examination of the language of the statute. *Wickens v Oakwood Healthcare System*, 465 Mich 53, 60; 631 NW2d 686 (2001). If the statute's language is clear and unambiguous, then we assume that the Legislature intended its plain meaning and the statute is enforced as written. *People v Stone*, 463 Mich 558, 562; 621 NW2d 702 (2001).[4]

> \*          \*          \*

> A clear and unambiguous statute requires full compliance with its provisions as written. *Northern Concrete Pipe, Inc v Sinacola Companies-Midwest, Inc*, 461 Mich 316, 320; 603 NW2d 257 (1999).[5]

> \*          \*          \*

> It is well settled that when a statute provides a remedy, a court should enforce the legislative remedy rather than one the court prefers. *Senters v Ottawa Savings Bank*, 443 Mich 45, 56; 503 NW2d 639 (1993).[6]

---

[3] *Roberts v Mecosta Co General Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002).

[4] *Id.*

[5] *Id.* at 66.

[6] *Id.* at n 5.

In *Pohutski v City of Allen Park*,[7] Chief Justice
CORRIGAN, writing for the majority of the Supreme
Court, stated that

> [w]hen parsing a statute, we presume every word is used
> for a purpose. As far as possible, we give effect to every
> clause and sentence. "The Court may not assume that the
> Legislature inadvertently made use of one word or phrase
> instead of another." *Robinson v Detroit*, 462 Mich 439, 459;
> 613 NW2d 307 (2000). Similarly, we should take care to
> avoid a construction that renders any part of the statute
> surplusage or nugatory. *In re MCI* [*Telecommunications
> Complaint*, 460 Mich 396, 414; 596 NW2d 164 (1999)].

In *Robertson v DaimlerChrysler Corp*,[8] a case the
majority cites but then shunts aside, Justice MARKMAN,
writing for the majority of the Supreme Court, turned
directly to the question whether courts should substi-
tute their judgment regarding what is logical for the
policies that are actually reflected in the law, stating:

> [T]he "fundamental principles" that we see at stake here
> implicate the role of this Court in the constitutional separa-
> tion of powers. That is, we believe that it is the constitu-
> tional duty of this Court to interpret the words of the
> lawmaker, in this case the Legislature, and *not* to substitute
> our own policy preferences in order to make the law less
> "illogical."[9]

In commenting on the dissent's reading of subsection
301(2) of the worker's compensation act, Justice
MARKMAN observed:

---

[7] *Pohutski v City of Allen Park*, 465 Mich 675, 684; 641 NW2d 219
(2002).
  [8] *Robertson v DaimlerChrysler Corp*, 465 Mich 732, 758; 641 NW2d 567
(2002).
  [9] Emphasis in original.

The dissent interprets section § 301(2) as if these words did not exist, as if they were not there at all. The dissent ignores these words apparently because it disagrees with the limitations that these words impose upon worker's compensation benefits. Thus, the dissent chooses to amend § 301(2) by summarily reading these words out of the law. In doing so, the dissent ignores the compromises and negotiations that may have preceded the inclusion of these words in the law, it ignores the concerns of the Legislature in avoiding abuse of the worker's compensation system that may have motivated such language, and it ignores the majorities of each house of the Legislature, and the Governor, who approved *these* words, not those that the dissent prefers. However, our judicial role "precludes imposing different policy choices than those selected by the Legislature . . . ." *People v Sobczak-Obetts*, 463 Mich 687, 694-695; 625 NW2d 764 (2001).[10]

Summarized, then, the Supreme Court has articulated a rather clear philosophy of statutory interpretation. The elements of this philosophy are: that if the Legislature uses language that is clear and unambiguous, courts should enforce the statute as written; that every word is used for a purpose and, as far as possible, we give effect to every clause and sentence; that we are not to assume that the Legislature inadvertently made use of one word or phrase instead of another and we should take care to avoid a construction that renders any part of the statute surplusage or nugatory; that we interpret the words of the Legislature and do not substitute our own policy preferences in order to make the law less "illogical"; and that we do not amend the statute by reading words out of (or, by logical extension, into) the law in order to impose different policy choices than those the Legislature

---

[10] *Id.* at 758-759 (emphasis in original).

selected. In my view, the majority in this case ignores, or departs from, each of these rather sensible directives.

V. INTERPRETING CLEAR AND UNAMBIGUOUS LANGUAGE

The critical word at issue in this case is "party" in MCL 600.2169(1)(a). The majority states, accurately, that Nippa contends that this word refers only to those litigants actually a party to the record.[11] The majority goes on to say that we should not interpret the word " 'party' narrowly to denote solely a party to the record proceeding."[12] The majority concedes, however, that the word " 'party' is a legal term of art that has acquired a particular meaning in the law."[13] The majority then quotes Black's Law Dictionary (6th ed), p 1122, for the proposition that

> "[p]arty is a technical word having a precise meaning in legal parlance; *it refers to those by or against whom a legal suit is brought, whether in law or in equity, the party plaintiff or defendant,* whether composed of one or more individuals and whether natural or legal persons; *all others who may be affected by the suit, indirectly or consequently, are persons interested but not parties.*"[14]

In this case, the "party defendant" is undeniably Botsford. Drs. Fan, Blackburn, and Mainster may be interested persons. They may be Botsford's agents. But they are *not* parties. Therefore, under the clear

---

[11] Nippa states in her brief that, "Undeniably and conspicuously, plaintiff's action for medical malpractice was not brought against any 'party' who was a specialist, nor was it brought against a 'party' who was board certified in any area of medicine."

[12] *Ante* at 673.

[13] *Ante* at 674.

[14] *Ante* at 674 (emphasis supplied).

and unambiguous words of the statute, Nippa did *not* need to file an affidavit of merit from a board-certified physician (or physicians) with specialties matching the specialties of these three physicians. Further, by definition, Botsford cannot be board certified in any specialty because it is an institution. The plain language of MCL 600.2169(1)(a) requires an affidavit of merit only "if the party against whom or on whose behalf the testimony is offered is a specialist who is board certified[.]" Nippa, while required to file an affidavit of merit signed by a physician, was therefore *not* required, when it sued only Botsford, to file such an affidavit signed by a board-certified specialist.[15] To require anything else is to enforce another (as yet unwritten) statute, not the one that the Legislature wrote.

### VI. GIVING EFFECT TO EVERY CLAUSE AND SENTENCE

The majority concludes, however, that accepting this plain meaning interpretation of the statute would " 'effectively repeal' " MCL 600.2169, "rendering it nugatory and meaningless . . . ."[16] Presumably, the majority concludes that interpreting the word "party" to mean . . . well . . . a *party* would, in the instance of a hospital that is the sole defendant, eliminate the requirement for an affidavit of merit signed by a board-certified specialist. My first response is that,

---

[15] I recognize, as I noted above, that Dr. Markowitz is board certified in internal medicine. Botsford's argument, which the majority accepts, is that Dr. Markowitz' board-certified specialties must match those of Drs. Fan, Blackburn, and Mainster. My contention is that, because Botsford is the only "party defendant" and because it cannot by definition be board certified in any specialty, the affidavit Nippa submitted did not need to be signed by a board-certified specialist.

[16] *Ante* at 675.

while this is obviously so, the language of the statute is not absolute but conditional, recognizing that board-certification may not be germane in every instance.[17] It is difficult for me to see how recognizing the conditional requirement of the statute is to "effectively repeal" it, or to render it "nugatory and meaningless."

Secondly, the majority simply ignores the balance of the statute. MCL 600.2169(2) sets out extensive standards by which trial courts are to evaluate the qualifications of an expert witness in an action alleging medical malpractice. Thus, under the statutory scheme that the Legislature actually enacted—and not the one the majority wishes it had enacted—a plaintiff who sues only a hospital does not avoid the requirement of an affidavit of merit. Rather, that plaintiff must show that the physician signing the affidavit of merit, while not necessarily board certified, meets all the standards in MCL 600.2169(2). The majority's approach here quite clearly fails to give *any* effect to the standards in MCL 600.2169(2). It is difficult for me to see, therefore, how the majority's interpretation of the statute gives meaning to every clause and sentence. Indeed, under the majority's approach, it appears that MCL 600.2169(2) does not even exist. It is, under this interpretation, MCL 600.2169(2) that is rendered "nugatory," "meaningless," and "surplusage."

If, however, the provisions of MCL 600.2169(2) were to be taken into account, the result would be

---

[17] MCL 600.2169(1)(a) ("[I]f the party against whom or on whose behalf the testimony is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty.") (emphasis added).

eminently sensible and the furthest thing from absurd: a plaintiff suing a hospital, and *only* a hospital, would be required to show that the physician signing the affidavit of merit, while not necessarily board certified, meets all the standards in MCL 600.2169(2). Such a result would, in my view, comport with the law that the Legislature passed and the Governor signed, preserving in the process the compromises and negotiations that may have preceded the inclusion of these words into the law.

### VII. SUBSTITUTING POLICY PREFERENCES

The majority cites *Dorris v Detroit Osteopathic Hosp Corp*[18] for the proposition that the Supreme Court has expressed its dissatisfaction with "gamesmanship." The gamesmanship to which the majority refers here is that "plaintiffs in medical malpractice actions could routinely avoid the requirements of § 2169 by declining to name individual physicians as defendants."[19] I find it interesting that the majority reaches the conclusion that complying with the plain words of the statute that the Legislature actually wrote—and, again, not the one that the majority wishes it had written—is "gamesmanship." The majority's policy preference, clearly, is that a plaintiff should be required to file affidavits of merit signed by board-certified physicians whose specialties match those of the individual physicians who are not parties but for whose alleged negligence the plaintiff seeks to hold a party defendant hospital accountable under a

---

[18] *Dorris v Detroit Osteopathic Hosp Corp*, 460 Mich 26, 43-47; 594 NW2d 455 (1999).

[19] Ante at 675.

theory of derivative liability. Candidly, that would be my policy preference as well. Such an approach would appear to be logical, fair, and, on the surface at least, workable. The problem, of course, is that this is *not* the policy preference that the Legislature expressed in the clear and unambiguous words of the statute.

## VIII. AMENDING THE STATUTE

The majority states that "if the Legislature had intended to strictly limit the definition of the word 'party' to parties of record as that word is generally defined in the law, it could have so stated."[20] Here, the majority simply presumes that the Legislature was ignorant of the fact that the word "party" is a legal term of art that has acquired a particular meaning in the law and that the Legislature just inadvertently made use of that word, instead of another, broader (or narrower) one. Acting on this presumption of ignorance, the majority then amends the statute to comport with its policy preferences: that the term "party" *should* also refer to the individuals who are claimed to have actually committed the alleged medical malpractice. Accordingly, the statute, as the majority amends it,[21] now reads: "However, if the party against whom or on whose behalf the testimony is offered is a specialist who is board certified, OR WHEN VICARIOUS LIABILITY IS ALLEGED AND THE INDIVIDUAL CLAIMED TO HAVE COMMITTED THE ACTUAL ACT OF MEDICAL MALPRACTICE IS A SPECIALIST WHO IS BOARD CERTIFIED, the

---

[20] *Ante* at 676.
[21] Using the amendatory bill format.

expert witness must be a specialist who is board certified in that specialty."

As I noted above, such an amended statute would be logical, fair, and, I would hope, workable. Perhaps the Legislature will enact such an amendment. As yet, however, it has not. There is nothing in our judicial commissions or anywhere to be found in the concept of the separation of powers that empowers us to perform this task as the Legislature's surrogate. It is not within our judicial responsibilities to undertake to do what the Legislature should have done, but did not do. The majority chooses to embark on just such an undertaking. I do not. I would, therefore, reverse.